**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| ROBERT BENEDICT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-109 REP |
| ) | |
| HANKOOK TIRE COMPANY LIMITED et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Robert Benedict ("Mr. Benedict"), by counsel and for his Memorandum in Support of Motion for Summary Judgment against Defendants Hankook Tire Company Limited ("HTCL") and Hankook Tire America Corporation ("HTAC"), respectfully states as follows

**EXHIBIT CITATIONS**

True and correct copies of the following documents have been appended to this brief as exhibits and will be cited in accordance with the following reference list:

1. Exhibit A ("Ex. A") – Robert Benedict deposition transcript excerpt

2. Exhibit B ("Ex. B") – Charles Palmer deposition transcript excerpt

3. Exhibit C ("Ex. C") – Trooper Frank Petrini deposition transcript excerpt

4. Exhibit D ("Ex. D") – HTCL/HTAC interrogatory responses excerpt

5. Exhibit E ("Ex. E") – HTCL and HTAC expert disclosures (pleading only)

6. Exhibit F ("Ex. F") – HTCL and HTAC tire expert disclosures (pleading only)

7. Exhibit G ("Ex. G") – Gary L. Holbrook expert report

8. Exhibit H ("Ex. H") – Gary L. Holbrook deposition transcript excerpt

1

9. Exhibit I ("Ex. I") – 2014 Virginia CDL Manual excerpt

10. Exhibit J ("Ex. J") – AAMVA CDL Manual

11. Exhibit K ("Ex. K") – DMV vehicle record

12. Exhibit L ("Ex. L") – Concrete log

13. Exhibit M ("Ex. M") – Micky Gilbert Rule 26(a)(2) report

14. Exhibit N (Ex. N") – Donald Tandy, Jr. deposition transcript excerpt

15. Exhibit O ("Ex. O") – Plaintiff's Answer to Defendants' Interrogatories excerpt

## STATEMENT OF UNDISPUTED FACTS

1. On November 14, 2014, Robert Benedict was employed by Essex Concrete (hereafter "Essex") as a commercial vehicle operator. R. Benedict Dep. (Ex. A) at 77:1-14.

2. As of November 14, 2014, Mr. Benedict maintained a valid Virginia Commercial Driver's License. R. Benedict Dep. (Ex. A) at 48:20-50:24.

3. On November 14, 2014, Essex tasked Mr. Benedict with driving a fully-loaded and spinning cement mixer truck designated as truck #769 (the "Cement Truck"). R. Benedict Dep. (Ex. A) at 115:7-14.

4. The Cement Truck was within the class of vehicles which Virginia law requires be operated by a driver holding a valid Commercial Driver's License ("CDL") See 49 C.F.R. § 390.5; Va. CDL Manual (Ex. I) at 3 (Bates numbered as BENEDICT 4729).

5. Prior to departing on his route, Mr. Benedict conducted a complete pre-trip inspection of the Cement Truck, which included visually inspecting the Cement Truck's tires,

checking the tires' tread depth, and checking the tires' air pressure. R. Benedict Dep. (Ex. A) at 106:19-114:24; see also R. Benedict Dep. Ex. 3 (Ex. A) (Bates numbered as ESSEX 00024).[1]

6. Mr. Benedict's pre-trip inspection did not reveal any findings of concern with regard to the tread of the vehicle's tires, their general appearance, or their air pressure. R. Benedict Dep. (Ex. A) at 113:12-115:2, 154:17-23; see also R. Benedict Dep. Ex. 3 (Ex. A) (Bates numbered as ESSEX 00024).

7. At 7:43 a.m., Mr. Benedict was driving the Cement Truck on Highway 288 in Colonial Heights, Virginia, occupying the right lane of the two northbound lanes at that location. R. Benedict Dep. (Ex. A) at 160:12-14; C. Palmer Dep. (Ex. B) at 29:3-12.

8. Mr. Benedict was traveling to his first cement delivery for that day and his load for the day was 8 cubic yards of concrete R. Benedict Dep. (Ex. A) at 134:8-14; Concrete Log (Ex. L) at 1.

9. Accordingly, the total weight of the Cement Truck weighed in excess of 50,000 pounds at that time. DMV Vehicle Record (Ex. K) at 1-10; Concrete Log (Ex. L) at 1; Gilbert Report (Ex. M) at 10.

10. While traveling on Highway 288, the tread on the right front steer tire (the "Subject Tire") separated from the carcass of the tire. Petrini Dep. (Ex. C) 123:19-125:5.

11. The Subject Tire was a HANKOOOK AURORA TH08 RADIAL 425/65 R22.5 bearing DOT # T76C MUA 4805 manufactured by Hankook Tire Corporation Limited (hereafter "HTCL") at the Daejeon Korea manufacturing plant in the 48th week of 2005 HTCL/HTAC Interrogatory Responses (Ex. D) at 4-6.

---

[1] Exhibit 3 to Mr. Benedict's deposition is a true and correct copy of the pre-trip inspection report completed by Mr. Benedict on the day of the accident. It has been included as part of deposition transcript excerpt appended hereto as Exhibit A.

12. The tread separation caused the Subject Tire to suffer a sudden and immediate loss of all air pressure. Tandy Dep. (Ex. N) at 26:18-27:4.

13. At the time of the tread separation, a car was attempting to pass Mr. Benedict in the left lane on Highway 288. Palmer Dep. (Ex. B) at 14:1-2.

14. Mr. Benedict had not expected the tread separation to occur and was caught completely by surprise when it did. Plaintiff's Ans. to Defendants' Interrogatories (Ex. O) at 2.

15. Prior to that date, Mr. Benedict had experienced 5-7 tire disablements, all on rear tandem wheels, none of which resulted in a crash, and none of which ever alerted him with a loud noise. R. Benedict Dep. (Ex. A) at 93:11-95:6.

16. Prior to that date, Mr. Benedict had never experienced a steer tire failure while operating a commercial vehicle. R. Benedict Dep. (Ex. A) at 93:11-15.

17. The tread separation and sudden air loss event resulted in a loud "boom" and caused the Cement Truck to experience an immediate pull to the right. R. Benedict Dep. (Ex. A) at 157:5-12, 163:1-16; see also Palmer Dep. (Ex. B) at 14:2-5; 28:18-23, 31:18-32.

18. Mr. Benedict heard the loud "boom" when the tread separation occurred but was uncertain whether he had experienced a tire failure. R. Benedict Dep. (Ex. A) at 156:18-157:4.

19. Upon hearing the loud "boom," Mr. Benedict immediately squeezed the steering wheel tight, removed his foot from the accelerator and attempted to steer the truck straight. R. Benedict Dep. (Ex. A) at 157:5-11.

20. Despite the sudden and unexpected nature of the tire failure and the resultant pull to the right, Mr. Benedict did not overcorrect the steering wheel to the left. Petrini Dep. (Ex. C) at 134:18-23.

21. Despite his efforts to keep the Cement Truck traveling straight, Mr. Benedict continued veering to the right and perceived that a collision with an embankment on the right side of the road was imminent and, accordingly, applied his brakes. R. Benedict Dep. (Ex. A) at 157:5-16, 165:1-5.

22. The vehicle continued to veer to the right and struck the embankment on the right hand side of the road. R. Benedict Dep. (Ex. A) at 157:5-20.

23. The crash into the embankment tripped the Cement Truck into a rollover event, and it came to rest upright after one roll with the cement mixer spilling cement onto the roadway. Petrini Dep. (Ex. C) at 81:9-15. The below images are true and accurate representations of the state of the Cement Truck following the collision with the embankment:





24. Despite experiencing a steering failure while a vehicle was attempting to pass to his left, Mr. Benedict maneuvered the Cement Truck in such a manner that the Cement Truck avoided colliding with any other vehicle. Palmer Dep. (Ex. B) at 13:20-14:2, Petrini Dep. (Ex. C) at 132:23-134:23.

25. Mr. Charles Palmer ("Mr. Palmer") witnessed the tire disablement and Cement Truck's collision with the embankment. Palmer Dep. (Ex. B) at 14:1-15:18.

26. Prior to the tire disablement, Mr. Benedict was driving within his assigned lane and the posted speed limit, and did not engage in any erratic driving maneuvers on part of Mr. Benedict. R. Benedict Dep. (Ex. A) at 155:22-156:13; Palmer Dep. (Ex. B) at 29:3-24.

27. Mr. Benedict estimated that the total time that passed from the moment he heard the "boom" until the moment he collided with the embankment was, at most, 2-3 seconds. R. Benedict Dep. (Ex. A) at 166:5-6.

6

28. This event was investigated by a Virginia State Trooper, Special Agent Frank Petrini ("Trooper Petrini"). Trooper Petrini is a member of the Virginia State Police reconstruction team and has received multiple levels of training as a part of this team. Petrini Dep. (Ex. C) 12:22-13:2, 33:23-34:1.

29. Trooper Petrini's investigation led him to conclude that Mr. Benedict had not taken any improper action in response to the tire failure. Rather, Trooper Petrini concluded Mr. Benedict had done everything correctly. Petrini Dep. (Ex. C) at 137:13-138:21.

30. Accordingly, Trooper Petrini did not issue Mr. Benedict a citation in connection with the collision. Petrini Dep. (Ex. C) at 137:13-138:21.

31. The 2014 Virginia Commercial Driver's License Manual (the "Virginia CDL Manual") was published by the Virginia Department of Motor Vehicles in July 2014, and accordingly, was in effect at the time of Mr. Benedict's accident. Va. CDL Manual (Ex. I) at 6 (Bates numbered as BENEDICT 4812).

32. The Virginia CDL Manual instructs commercial drivers as to the "important information that [they] must know to operate [their] vehicle in a safe and professional manner." Va. CDL Manual (Ex. I) at 2 (Bates numbered as BENEDICT 4726).

33. With regard to responding to a tire failure, the Virginia CDL Manual provides commercial vehicle operators the following instructions:

> If a tire fails, take the following steps:
>
> - Hold the steering wheel firmly. If a front tire fails, it can twist the steering wheel out of your hand. Keep a firm grip on the steering wheel with both hands at all times.
>
> - Stay off the brakes. Braking when a tire has failed could cause you to lose control. Unless you are about to run into something, stay off the brake until the vehicle has slowed down. Then, brake gently and pull off the road.

- Check the tires. Even if the vehicle seems to be handling normally. Many times you won't know that a dual tire is flat unless you look at it.

Va. CDL Manual (Ex. I) at 5 (Bates numbered as BENEDICT 4760).

34. Defendants' own trucking expert, Gary L. Holbrook ("Mr. Holbrook"), testified that Mr. Benedict's response to the tire disablement was "consistent" with the recommendations contained in the 2014 Virginia Commercial Driver's License Manual (the "Virginia CDL Manual") with regard to how a commercial driver should respond to a tire disablement. Holbrook Dep. (Ex. H) at 112:6-8.

35. Additionally, Mr. Holbrook's report acknowledges that a tire disablement presents an emergency situation for commercial drivers. Holbrook Report (Ex. G) at 5.

## LEGAL STANDARD

Under Rule 56(c), summary judgment is only appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Martin v. Lloyd, 700 F.3d 132, 135 (4th Cir. 2012). In determining whether there is a genuine issue of material fact, the Court views the evidence in the light most favorable to the nonmoving party. Id. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the motion is properly supported, however, the burden shifts to the nonmoving party to show that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In this regard, the nonmoving party must present more than a "mere . . . scintilla of evidence" to forestall

summary judgment. Anderson, 477 U.S. at 252. Thus, "unsupported speculation . . . is not sufficient to defeat a summary judgment motion." Ash v. United Parcel Svc., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). It is well-settled that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted).

## ARGUMENT

Defendants assert in their Answers that Mr. Benedict's contributory negligence was the sole cause of the accident on November 14, 2014. See HTAC Answer at 9, ECF No. 47, July 26, 2017; HTCL Answer at 9, ECF No. 48, July 26, 2017. Mr. Benedict now seeks summary judgment as to Defendants' affirmative defense on the grounds that Defendants have not designated competent expert testimony defining the standard of care governing Mr. Benedict's conduct in this case and any alleged deviations that he made from the standard of care. Mr. Benedict's arguments in this regard are set forth more particularly below.

**I.  Defendants' Burden of Proof in Establishing Contributory Negligence Includes Defining the Standard of Care Applicable to Mr. Benedict's Conduct and Establishing a Deviation from that Standard.**

It is well-settled under Virginia law that a party only creates a jury question on the affirmative defense of contributory negligence when it can elicit competent evidence of each element of the defense:

> [J]ust as a plaintiff is required to establish a prima facie case of negligence, a defendant who relies upon the defense of contributory negligence must establish a prima facie case of the plaintiff's contributory negligence. Hence, a defendant who asserts a defense of contributory negligence is not entitled to a jury instruction on contributory negligence if that defendant only adduces a mere scintilla of evidence of the plaintiff's purported contributory negligence. **A defendant who relies upon the defense of contributory negligence must prove that the plaintiff deviated from a standard of care and that the deviation was a**

9

>**proximate cause of damages.** Consequently, more than a scintilla of evidence is necessary to establish each of the elements of contributory negligence before such instruction may be given to a jury.

Sawyer v. Comerci, 264 Va. 68, 75, 563 S.E.2d 748, 753 (2002) (emphasis added).

The standard of care of owed by the plaintiff under the doctrine of contributory negligence is to take "reasonable care" in protecting his own safety under the circumstances. Artrip v. E.E. Berry Equip. Co., 240 Va. 354, 397 S.E.2d 821, 824 (1990). However, the reasonable care standard does not exist in a vacuum, and a defendant asserting the defense of contributory negligence must have competent evidence setting the specific standard of conduct against which the plaintiff's actions are to be tested before a jury question is created on the factual issue of negligence. Callas v. Trane CAC, Inc., 776 F. Supp. 1117, 1122 (W.D. Va. 1990) ("However, the factual issue of [contributory] negligence cannot get to a jury without first finding a legal standard by which to measure the allegedly negligent acts."). Accordingly, when a defendant's evidence fails to define the standard of care applicable to the plaintiff's conduct and/or the plaintiff's deviations from the standard of care, the plaintiff is entitled to summary judgment on the issue of contributory negligence. Id.; see also Jones v. Meat Packers Equipment Co., 723 F.2d 370, 372 (4th Cir. 1983) ("A federal standard determines the sufficiency of the evidence for submission of an issue to a jury. In the absence of evidence, or reasonable inferences that can be drawn from the evidence, disclosing that [the plaintiff] was negligent, the issue of contributory negligence should not have been submitted to the jury.").

Under Virginia law, if the standard of care to be applied to an individual's conduct is not "obvious from ordinary human knowledge and experience," it must be defined through expert testimony. Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 433, 457 S.E.2d 28, 33 (1995) (internal quotes and citations omitted). Thus, where the definition of

10

reasonable care in a particular case would turn upon employing technical or specialized knowledge, the party bearing the burden of proof must define the standard of care and any deviations from the same through expert testimony to create a jury question on the issue of negligence. See, e.g. William H. Gordon Assocs. v. Heritage Fellowship, 291 Va. 122, 142, 784 S.E.2d 265, 274 (2016); Bly v. Rhoads, 216 Va. 645, 653, 222 S.E.2d 783, 789 (1976). In such circumstances, the failure to define the operative standard of care through expert testimony is fatal to a negligence claim or defense because it improperly invites the jury to speculate as to what standard of care applies to the challenged conduct. Chandler v. Graffeo, 268 Va. 673, 681, 604 S.E.2d 1, 5 (2004); Seaward Int'l, Inc. v. Price Waterhouse, 239 Va. 585, 592, 391 S.E.2d 283, 287 (1990).

For example, the defendant in Commonwealth v. Nelson attempted to assert a counterclaim against an architectural/engineering company with regard to various failures to provide administrative services in the construction of a hospital. Commonwealth v. Nelson, 235 Va. 228, 239, 368 S.E.2d 239, 245 (1988). Noting the operative contract required that these services be provided "consistent with normal architectural practices," the Court explained that the defendant was required to prove that the architects failed to perform their administration duties "with a reasonable degree of technical skill." Id. It went on to explain that "[t]his standard of care properly should have been the subject of expert testimony because the trier of fact is not permitted to speculate as to the professional standard against which to measure the reasonableness of an architect's actions or inaction." Id.

The Court then surveyed the record of the evidence at trial. Id. at 240, 368 S.E.2d at 246. In doing so, it observed that no qualified expert witness at trial had given an opinion defining the particular standard of care required of architects in administering contracts. Id. Although one

11

witness had opined that the architectural company had failed to make the proper spot checks, the Court took note that the witness "was not an architect, he was not trained in the duties of construction administration, and he was not qualified to give expert testimony concerning architectural malpractice." Id. The Court concluded "our search of this voluminous record discloses no expert testimony sufficient to enable a jury of laymen to learn the standard of care required of architects in the performance of their duties to administer construction and to determine whether [the plaintiff] had violated those duties. Id. at 241, 368 S.E.2d at 246.

**II.     Defendants have no Competent Evidence of the Standard of Care Applicable to Mr. Benedict's Conduct or Any Deviations from Such a Standard.**

As explained above, Defendants' assertion of contributory negligence injects the inquiry into this case of whether Mr. Benedict employed reasonable care with regard to his own safety. However, the "reasonable care" standard must be fitted to the context of the case. See, e.g., Hatten v. Sholl, No. 3:01CV00031, 2002 U.S. Dist. LEXIS 2583, at *11 (W.D. Va. Feb. 13, 2002) ("In this case, the [reasonableness] inquiry centers on the care a reasonable truck driver would have used under the circumstances."). Accordingly, Defendants' assertion of contributory negligence in this case requires the jury to determine what a reasonable commercial vehicle operator operating a loaded cement mixer would have done to protect his or her own safety upon experiencing an unexpected steer tire failure while driving 60-65 miles per hour on a multi-lane highway in close proximity to a passing vehicle. Mr. Benedict contends that the care required in such a scenario is not "obvious from ordinary human knowledge and experience" and, accordingly, the standard of care governing his conduct in that situation is one that must be defined through expert testimony. In this regard, the Virginia CDL Manual in effect at the time of Mr. Benedict's collision speaks to the specialized nature of his profession:

> Operating a commercial vehicle requires education, special skills and a professional attitude. As a professional driver, you play a key

> role in transporting people and goods safely. You also play a key role in protecting citizens on our highways. This manual presents important information that you must know to operate your vehicle in a safe and professional manner.

Va. CDL Manual (Ex. I) at 2 (Bates numbered as BENEDICT 4726). The CDL Manual also instructs commercial vehicle operators that they are the "expert[s]" in responding to road hazards that occur during driving. Va. CDL Manual (Ex. I) at 4 (Bates numbered as BENEDICT 4750). Not surprisingly, several courts applying Virginia law have concluded that reasonableness of a commercial vehicle operator's driving technique implicates technical and specialized knowledge and is the proper subject of expert opinion.[2]

Defendants have designated a number of experts in this case. See generally Def.s' Expert Disclosures (Exs. E and F). However, only one of Defendants' designated expert witnesses holds a CDL and possesses education, training, and experience as a commercial vehicle operator–Mr. Holbrook. See Holbrook Report (Ex. G) at 2. Accordingly, to the extent Defendants intend to provide expert testimony defining the standard of care governing Mr. Benedict's conduct and any deviations from the same at trial, such testimony would need to be elicited through Mr. Holbrook. Yet, a review of Mr. Holbrook's Rule 26(a)(2) report reveals that

---

[2] See, e.g., Roberts v. Sunbelt Rentals, Inc., 5:14-cv-00040, 2016 U.S. Dist. LEXIS 41897, at *28 (W.D. Va. Mar. 30, 2016) ("The court does not believe that the average person knows whether or under what circumstances it is appropriate for a driver of a commercial vehicle to use a red light in the manner [at issue] in this case. That issue, then, is the proper subject of expert testimony."); Hatten v. Sholl, No. 3:01-cv-00031, 2002 U.S. Dist. LEXIS 8872, at *13 (W.D. Va. Jan. 16, 2002) ("Most assuredly, his opinions would be helpful to a lay jury, as while the general public may be familiar with backing the family car out of the garage, it is not likely that the general public would have a working knowledge of the special procedures involved in safely maneuvering a 50,000-ton tractor in reverse with no rearview mirrors in a congested loading dock."); see also Zoll v. Werner Enters., 74 Va. Cir. 172, 174 (Va. Cir. Ct. 2007) ("The testimony offered by the Plaintiff, such as the proper adjustment of mirrors and use of the jake brake, and trucking industry standards for drivers appear to fall into the category of admissible 'specialized' or 'technical' principles that the ordinary lay person may not know.").

he expresses only the following opinions against Essex (Mr. Benedict's employer at the time of the accident):

1. Essex failed to properly train Mr. Benedict to handle a steer tire failure;

2. Essex was required to properly service, maintain, and inspect its vehicles and remove damaged tires from service; and

3. Essex did not adequately adhere to safety regulations and safe practices in the qualification, hiring, training, and supervision of Mr. Benedict.

Holbrook Report (Ex. G) at 5-8.[3]

Conspicuously absent from Mr. Holbrook's report is <u>any opinion whatsoever setting the standard of care</u> for Mr. Benedict's conduct as a commercial truck driver <u>in any particular situation</u> or <u>identifying any deviations from that standard of care (i.e., unreasonable conduct) by Mr. Benedict at any point in time</u>. Regarding the former, the closest Mr. Holbrook comes to offering a standard of care opinion is:

1. Generally referencing two videos that he believes provide "good illustration[s] of the proper driver's response to a tire failure, including the failure of a steer tire"; and

2. Including block quote content from what Mr. Holbrook represents to be the Virginia Commercial Driver's License Manual regarding the recommended response by a driver to a tire failure.[4]

---

[3] As an aside, Mr. Holbrook withdrew several of his opinions in his deposition when it became evident they were without a basis in fact. The admissibility of the remaining opinions will be challenged by a separate motion.

[4] In fact, the language Mr. Holbrook quotes in his report is not from the Virginia CDL Manual, but instead is a quote from a CDL Manual compiled by the American Association of Motor Vehicle Administrators ("AAMVA"). Compare Holbrook Report (Ex. G) at 5-6, with Virginia CDL Manual (Ex. I) at 5 (Bates numbered as BENEDICT 4760); AAMVA CDL Manual (Ex. J) at 2 (numbered in the document as 2-34). Although the language regarding the suggested

Holbrook Report (Ex. G) at 5.

Both of these references are made as part of Mr. Holbrook's bases for opining Essex Concrete purportedly failed to properly train Mr. Benedict.  Holbrook Report (Ex. G) at 5. Critically, however, there is no opinion anywhere in Mr. Holbrook's report adopting either the videos or the CDL manual (or both) as the standard of care governing Mr. Benedict's conduct.

The failure of Mr. Holbrook to specifically state and define the standard of care required of Mr. Benedict is problematic because, absent a clear opinion to this effect, the jury would be forced to speculate as to the operative standard of care for a number of reasons.  First, the sources Mr. Holbrook cites on the issue are not uniform in their recommendations and Mr. Holbrook provides no analysis as to which of the conflicting recommendations Mr. Benedict should have followed in this case.  Holbrook Dep. (Ex. H) at 122:2-125:10.  Namely, Mr. Holbrook acknowledged that the Michelin video referenced in his report recommends a driver accelerate during a tire failure—a recommendation not mentioned (and implicitly contradicted) by the Virginia CDL Manual, which counsels drivers experiencing a tire failure to allow the vehicle to slow down without braking (a process that could only be accomplished by removing one's foot from the accelerator).   Holbrook Dep. (Ex. H) at 122:2-125:10.  Second, Mr. Holbrook dispelled any notion that the jury could identify the applicable standard of care merely by watching the videos referenced in his report because he acknowledged that the recommendations do not apply to every tire failure and a driver would need to use professional judgment to either adhere to or disregard those recommendations because "every situation is

---

response by a commercial vehicle operator to a tire failure in the Virginia CDL Manual is similar to the language contained in the AAMVA CDL Manual, the two are not identical.  Compare Virginia CDL Manual (Ex. I) at 5 (Bates numbered as BENEDICT 4760), with AAMVA CDL Manual (Ex. J) at 2.  Mr. Holbrook's failure to even be familiar with the source he is quoting in his report is indicative of the sort of due care he took in conducting his analysis.

somewhat different." Holbrook Dep. (Ex. H) at 125:5-10. With regard to Mr. Benedict, for example, Mr. Holbrook explained that he would not expect a driver experiencing a tire failure to accelerate if the driver perceived a collision with an embankment was imminent. Holbrook Dep. (Ex. H) at 122:11-123:6.

Yet – despite acknowledging the potentially contradictory nature of his source materials and the fact that each tire disablement presents its own unique circumstances where the non-uniform recommendations in those materials may need to be disregarded – Mr. Holbrook made no effort to define the particular standard of care applicable to Mr. Benedict's conduct in his report. Defendants cannot rely on such opaque references to satisfy their obligation to designate an expert opinion specifically defining the standard of care governing Mr. Benedict's conduct. See, e.g., Sharpe v. United States, 230 F.R.D. 452, 460-61 (E.D. Va. 2005) (holding expert report which indicated potential omissions in care but failed to actually define the specific standard of care applicable to the case was fatally deficient as to proving the negligence claim). Moreover, even if generic references to these sources could be construed as tendering a proper standard of care opinion, **Mr. Holbrook's report is wholly devoid of any opinion identifying how Mr. Benedict's conduct deviated from that standard or identifying any conduct by Mr. Benedict that was unreasonable in any way whatsoever**. **Much to the contrary, Mr. Holbrook conceded in his deposition that Mr. Benedict's response to the tire disablement was consistent with the recommendations of the Virginia CDL Manual.** Holbrook Dep. (ex. H) 108:2-112:8. Moreover, Defendants adopted the opinions stated by Trooper Petrini in his deposition as part of their expert disclosures. Def.s' Expert Disclosures (Ex. E) at 5. ("Special Agent Petrini is also expected to testify consistent with the testimony and opinions contained in his May 5, 2017 deposition, which is incorporated herein by reference."). Trooper Petrini opined

during his deposition that Mr. Benedict had done everything correctly in responding to the tire failure.  Petrini Dep. (Ex. C) at 137:13-138:21.

Virginia law is settled that a claim of negligence falling outside of the common knowledge of the jury can only be sustained through expert testimony establishing the standard of care and deviations from the same.  Seaward Int'l, Inc., 239 Va. at 592, 391 S.E.2d at 287.  In this case, one looks in vain for any such opinions from a qualified witness in Defendants' expert disclosures.  As there is no competent evidence in the record defining the governing standard of care applicable to Mr. Benedict's conduct and any deviations from the same by Mr. Benedict, Defendants have failed to create a genuine issue of material fact on the question of Mr. Benedict's purported contributory negligence and he is entitled to judgment as a matter of law on the issue.  Callas, 776 F. Supp. at 1122.[5]

## CONCLUSION

Accordingly, for the foregoing reasons, Mr. Benedict requests that this Court enter an Order granting summary judgment in his favor on the issue of contributory negligence and awarding him any other relief deemed appropriate.

---

[5] As a final point, it is worth highlighting that the content of Mr. Holbrook's report further supports Mr. Benedict's position that the standard of care governing his conduct as a commercial vehicle operator in this case is not "obvious from ordinary human knowledge and experience." Mr. Holbrook opines that commercial vehicle operators must be trained as to the specific vehicle they will operate and abide by numerous federal and state regulations as part of their profession. Holbrook Report (Ex. G) at 5, 8.  Moreover, Mr. Holbrook opines that commercial vehicle drivers (even those with years or decades of experience) must be provided particularized, recurrent driver training with regard to handling tire disablements because mere driving experience alone is not an effective substitute for such training.  Holbrook Report (Ex. G) at 6. Perhaps the most compelling evidence on the issue is Mr. Holbrook's acknowledgement in his deposition that the appropriate response to a tire disablement by a commercial vehicle driver is fact-specific and may involve disregarding recommendations made in his cited references. Holbrook Dep. (Ex. H) at 125:5-10.

DATE: October 19, 2017						Respectfully Submitted,

							ROBERT BENEDICT


							_____/s/_____

							Jonathan E. Halperin, Esq. – VSB No. 32698
							Isaac A. McBeth, Esq. – VSB No. 82400
							Andrew Lucchetti, Esq. – VSB No. 86631
							Halperin Law Center, LLC
							5225 Hickory Park Drive, Suite B
							Glen Allen, VA 23059
							Phone: (804)527-0100
							Fax: (866) 335-1502
							jonathan@halperinlegal.com
							isaac@halperinlegal.com
							andrew@halperinlegal.com
							*Counsel for Robert Benedict*

							Jay Halpern, Esquire (Fl. Bar No. 260576)
							*Pro Hac Vice*
							Co-Counsel for Plaintiff
							Jay Halpern & Associates
							150 Alhambra Cir. #1100
							Coral Gables, FL 33134
							(305) 445-1111 telephone
							(305) 445-1169 facsimile
							jay@hsptrial.com
							*Counsel for Robert Benedict*

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2017, I filed the foregoing filing using the Court's CM/ECF system which sent electronic notification of this filing to the following counsel of record:

Martin A. Conn, Esquire (VSB No. 39133)
Matthew J. Hundley, Esquire (VSB No. 76865)
Moran Reeves & Conn PC
100 Shockoe Slip, 4th Floor
Richmond, VA 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
mconn@moranreevesconn.com
mhundley@moranreevesconn.com
*Counsel for Hankook Tire Company Limited and Hankook Tire America Corporation*


T. Steven Har, Esquire (NYB No. NY-2326478)
Christopher Campbell Esquire (Georgia/New York Bar No. NY-789533-65189185)
Joel A. Dewey (VSB No. 37319)
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone: (212) 335-4716
Facsimile: (212) 335-4501
steven.har@dlapiper.com
christopher.campbell@dlapiper.com
joel.dewey@dlapiper.com
*Counsel for Hankook Tire Company Limited and Hankook Tire America Corporation*


By: _____/s/_____
　　　　　　　　Counsel

Jonathan E. Halperin - VSB No. 32698
Isaac McBeth – VSB No. 82400
Andrew Lucchetti – VSB No. 86631
Halperin Law Center, LLC
5225 Hickory Park Drive, Suite B
Glen Allen, VA 23059
(804) 527-0100
(866) 335-1502 facsimile
jonathan@halperinlegal.com
isaac@halperinlegal.com
andrew@halperinlegal.com
*Counsel for Robert Benedict*