# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ROBERT BENEDICT,

    Plaintiff,

v.                            Civil Action No. 3:17-cv-109

HANKOOK TIRE COMPANY
LIMITED, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff Robert Benedict's MOTION FOR SUMMARY JUDGMENT (ECF No. 52). The motion was granted by ORDER (ECF No. 221) dated November 27, 2017. This Memorandum Opinion sets out the reasoning for having done so.

## I.    BACKGROUND

In this products liability action, Robert Benedict sues Hankook Tire Company Limited ("HTCL") and Hankook Tire America Corporation ("HTAC") for the production and distribution of an allegedly defective tire. Benedict seeks summary judgment as to Defendants' affirmative defense of contributory negligence.

### A.    Undisputed Relevant Facts

On the morning of November 14, 2014, Benedict set out on his route delivering cement for his employer, Essex Concrete ("Essex"), in a fully-loaded cement mixer truck. Benedict was authorized to

operate the truck because he maintained a valid Commercial Driver's License ("CDL").

While driving in the right-hand lane along Highway 288 in Colonial Heights, VA on his way to the first delivery of the day, Benedict heard a loud "boom." The tread on the front right tire (the "subject tire") separated (the "tread separation"), resulting in a sudden loss of all air pressure. Benedict was caught completely off guard by this event and, indeed, was uncertain as to whether a tire failure had occurred. He had not noticed any items of concern during his pre-trip inspection of the subject tire. And, although he had experienced five to seven tire disablements in the past, all had involved rear tandem tires and none had resulted in a loud noise.

At some point after Benedict perceived the boom, his truck veered to the right and struck an embankment on the side of the road. The truck then rolled once and came to rest upright. Benedict estimates that the total time between the boom and the collision with the embankment was "at most, 2-3 seconds."

Before the tire failure, Benedict was driving normally and at a lawful speed. The incident was investigated by a Virginia State Trooper, who concluded that Benedict took no improper action in response to the disablement.

At the time of the accident, the 2014 Virginia Commercial Driver's License Manual (the "CDL Manual"), published by the Virginia

2

Department of Motor Vehicles, was in effect. It apprises commercial drivers of "important information that [they] must know to operate [their] vehicle[s] in a safe and professional manner." Pl.'s Br. Ex. I Introduction. It advises drivers facing a tire failure to:

> **Hold the steering wheel firmly**. If a front tire fails, it can twist the steering wheel out of your hand. Keep a firm grip on the steering wheel with both hands at all times.

> **Stay off the brakes**. Braking when a tire has failed could cause you to lose control. Unless you are about to run into something, stay off the brake until the vehicle has slowed down. Then, brake gently and pull off the road.

> **Check the tires**. Even if the vehicle seems to be handling normally. Many times you won't know that a dual tire is flat unless you look at it.

Pl.'s Br. Ex. I 34.

The subject tire was a Hankook Aurora TH08 Radial 425/65 R22.5 manufactured by HTCL in South Korea in 2005 and distributed by HTAC.

Two cuts extending to the belts have been found on the subject tire. Federal regulations require removing tires from service if they suffer cuts of a specified level of severity.

**B. Procedural History**

Benedict initially asserted three claims: (1) products liability negligence (including manufacturing defect, design defect, and failure to warn); (2) breach of the implied warranty of merchantability; and (3) breach of the implied warranty of fitness for a particular purpose. First Am. Compl. 5-11. He is now pursuing

3

only the negligent manufacturing and implied warranty of merchantability claims. Nov. 20, 2017 Hr'g Tr. 4.

Defendants raised several affirmative defenses in response, including contributory negligence. HTCL's Answer to First Am. Compl. 9; HTAC's Answer to First Am. Compl. 9.

Both sides then moved for summary judgment. Benedict sought partial summary judgment to bar Defendants' contributory negligence defense. Defendants sought summary judgment as to Benedict's active claims. Related to their motion, Defendants also moved the Court to exclude the testimony of Benedict's tire expert, David Southwell. The Court ruled on these three motions during a hearing held on November 20, 2017, Nov. 20, 2017 Hr'g Tr. 152, and issued an ORDER (ECF No. 221) on November 27, 2017 formalizing its decision. This Opinion is thus one of three detailing the Court's reasoning in this matter. (ECF Nos. 341-43).

## II. GOVERNING LEGAL STANDARDS

### A. Summary Judgment

Motions for summary judgment are governed by the following well-established principles:

> Federal Rule of Civil Procedure 56(a) instructs that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

4

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When evaluating a motion for summary judgment under Rule 56, any disputed "facts must be viewed in the light most favorable to the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007). In general, the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

United States v. Woody, 220 F. Supp. 3d 682, 685–86 (E.D. Va. 2016). "Once the moving party properly files and supports its motion for summary judgment, the opposing party must show that a genuine issue of fact exists." Milbourne v. JRK Residential Am., LLC, 92 F. Supp. 3d 425, 427 (E.D. Va. 2015).

## B. Contributory Negligence

Virginia is a contributory negligence jurisdiction, and, therefore, a plaintiff's own negligence may be "a complete bar to an action based on negligence." See Jones v. Meat Packers Equip. Co., 723 F.2d 370, 373 (4th Cir. 1983).[1] Contributory negligence is thus available as an affirmative defense if "the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." Jenkins v. Pyles, 611 S.E.2d 404, 407 (Va. 2005).

---

[1] It is undisputed that Virginia law applies here, given that Virginia is the state of the injury. See Norris v. Excel Indus., Inc., 139 F. Supp. 3d 742, 747 (W.D. Va. 2015); Sutherlin v. Lowe's Home Ctrs., LLC, 3:14-cv-368, 2014 WL 4748530, at *2 (E.D. Va. Sept. 23, 2014); Ford Motor Co. v. Nat'l Indem. Co., 972 F. Supp. 2d 850, 855–56 (E.D. Va. 2013).

To prevail, the defense must establish "the independent elements of negligence and proximate causation." See Rascher v. Friend, 689 S.E.2d 661, 664-65 (Va. 2010).

The standards governing the negligence prong of this framework are familiar. A party must "show the existence of a legal duty" and "a breach of the duty." See Atrium Unit Owners Ass'n v. King, 585 S.E.2d 545, 548 (Va. 2003). Compliance with a legal duty is measured against the relevant "standard of care," which can be "established by the common law or by statute," among other things. See Ex rel. Steward v. Holland Family Props., LLC, 726 S.E.2d 251, 254 (Va. 2012).

Proximate cause is a more nebulous concept that is "difficult to define and almost impossible to explain conclusively." Huffman v. Sorenson, 76 S.E.2d 183, 186 (Va. 1953). This is especially true with respect to "apply[ing] the rules relating to proximate cause to the facts of a particular case." Banks v. City of Richmond, 348 S.E.2d 280, 283 (Va. 1986). Thus, the Supreme Court of Virginia has observed: "[t]here is no yardstick by which every [proximate cause] case may be measured and fitted into its proper place. In each case the problem is to be solved upon mixed considerations of logic, common sense, justice, policy and precedent." Id. (quoting Scott v. Simms, 51 S.E.2d 250, 253 (Va. 1949)). And, accordingly, it has advised "that '[e]ach case necessarily must be decided upon its own facts and circumstances.'" Id. (quoting Huffman, 76 S.E.2d at 186).

Nevertheless, some clear guidance has emerged. Under Virginia law, something more is required than "simplistic 'but for'" causation to "resolve the proximate cause question." Banks, 348 S.E.2d at 283. Rather, "[t]he proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beale v. Jones, 171 S.E.2d 851, 853 (Va. 1970). Put another way, "it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that the injury should have been foreseen in the light of the attending circumstances." Interim Personnel of Cent. Va. v. Messer, 559 S.E.2d 704, 708 (Va. 2002). Finally, "[t]here may be more than one proximate cause of an event." Rascher, 689 S.E.2d at 665.

## III. DISCUSSION

### A.    The Expert Testimony Rule

The threshold question to be resolved in deciding Benedict's motion is whether Defendants must produce expert testimony to establish the standard of care by which to measure Benedict's conduct. Benedict asserts that Virginia law requires the elements of negligence to be demonstrated by expert testimony where, as here, they turn on "technical or specialized knowledge" because the proper response of a commercial truck driver to a tire failure falls into this category. See Pl.'s Br. 10-17. Defendants do not dispute that

expert testimony is generally required in technical cases or that this case is sufficiently complex to require expert testimony under the general rule. Defs.' Opp'n 12. Rather, they contend that an exception should be made here, to wit, that expert testimony as to the standard of care is unnecessary because the "CDL Manual"[2] itself defines the standard. See Defs.' Opp'n 12-13. They also argue that the experts in this case have established the CDL Manual as the standard of care;[3] that there is sufficient evidence that Benedict failed to comply with the CDL Manual; and that a deviation from the standard of care is a jury question outside the province of experts.

---

[2] As both sides observe, there are two CDL Manuals: the Virginia CDL Manual and the AAMVA CDL Manual. The parties squabble over the legal significance of this fact. See, e.g., Pl.'s Br. 14-15 n.4; Defs.' Opp'n 6 n.2, 13; Pl.'s Reply Br. 1-2, 1 n.1, 7-8; Nov. 20, 2017 Hr'g Tr. 7-8, 13-15, 38-39; see also Defs.' Mem. in Supp. of Mot. to Amend J. Based on Misrepresentation 1-2. The differences between the Manuals, however, are negligible, compare Pl.'s Br. Ex. I 34, with Pl.'s Br. Ex. J 2-34, and in no way affect the decision. For sake of analysis, both will be assumed to be admissible and substantively the same.

[3] Defendants do not raise this point in the body of their brief. See Defs.' Opp'n 12-13. It only appears in a single sentence in the brief's "Introduction" and arguably in a few sentences within the portion of the "Background" supporting Defendants' contention that expert testimony as to the standard of care is unnecessary because the CDL Manual sets the standard on its own and every expert in this case relies on it. See Defs.' Opp'n 1, 4-8. At oral argument, however, Defendants sought to invigorate their position by pivoting this argument and asserting that Defendants' and Benedict's experts had implicitly established the CDL Manual as the standard of care. See Nov. 20, 2017 Hr'g Tr. 11-25. That belated maneuver alone is sufficient reason to disregard the argument, but it is best to address its merits given that Benedict's counsel was not handicapped in responding to it.

See Defs.' Opp'n 1, 4, 8, 14-16.

For the reasons that follow, the Court concludes that expert testimony is required to illuminate the standard of care under the facts presented by this case and that Defendants' arguments are unavailing.

### 1. The Parties Are Correct that the Expert Testimony Rule Has Been Triggered

The first issue is whether, as the parties seem to agree, this case comes within the category of cases covered by the expert testimony rule. Just because both sides have agreed to this legal conclusion does not mean that the Court is bound by it. See H&R Block E. Enters., Inc. v. Raskin, 591 F.3d 718, 723 n.10 (4th Cir. 2010). The parties' view here, however, is correct.

Under Virginia law,[4] issues "beyond the realm of common knowledge and experience of a lay jury" generally require expert testimony. See Beverly Enters.-Va., Inc. v. Nichols, 441 S.E.2d 1, 3 (Va. 1994). In technical negligence cases, therefore, "[e]xpert testimony is ordinarily necessary to establish the appropriate

---

[4] Federal courts sitting in diversity apply state law, i.e., Virginia law, in evaluating whether expert testimony is required in technical cases. See, e.g., Shortt v. Immigration Reform Law Inst., 480 F. App'x 209, 210-11 (4th Cir. 2012) (per curiam); Design & Prod., Inc. v. Am. Exhibitions, Inc., 820 F. Supp. 2d 727, 737-38 (E.D. Va. 2011); Baserva v. Remes, 1:08-cv-997, 2009 WL 1392532, at *2 (E.D. Va. May 18, 2009). Whether an expert is qualified is, with rare exception, governed by federal law. See Creekmore v. Maryview Hosp., 662 F.3d 686, 690-91 (4th Cir. 2011); Ex rel. Bryte v. Am. Household, Inc., 429 F.3d 469, 475-76 (4th Cir. 2005).

standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages." See id.

The expert testimony rule applies in diverse settings. It is often employed in medical malpractice matters. See, e.g., Nichols, 441 S.E.2d at 3. Cases involving engineering, architecture, and automotive transmission design are also "sufficiently technical" to animate application of the rule. William H. Gordan Assocs., Inc. v. Heritage Fellowship, 784 S.E.2d 265, 274 (Va. 2016). Federal courts have even applied the rule to firearms trainers, Tolbert v. Am. Sec. Programs, Inc., WGC-13-2359, 2015 WL 1431550, at *3-5 (D. Md. Mar. 26, 2015), and museum exhibition designers, Design & Prod., Inc. v. Am. Exhibitions, Inc., 820 F. Supp. 2d 727, 731-32, 737-38 (E.D. Va. 2011).

Virginia courts have offered little insight into whether the standard of care applicable to commercial truck drivers is beyond a jury's common knowledge. One Circuit Court opinion admitted expert testimony as to, inter alia, "the proper adjustment of mirrors . . . use of the jake brake, and trucking industry standards for drivers [in training]" because these involve "'specialized' or 'technical' principles that the ordinary lay person may not know." Zoll v. Werner Enters., Inc., CL05-27, 2007 WL 5963778, at *2 (Va. Cir. Ct. Sept. 20, 2007). But the parties have offered no additional Virginia decisional guidance on the issue.

10

Federal courts in our circuit, however, have suggested that commercial truck driving standards are often technical but that the answer depends on the specific facts and circumstances. In Roberts v. Sunbelt Rentals, Inc., for instance, the district court admitted expert testimony to establish the standard of care where a truck driver relied on a red light in determining that the road behind him was empty before making a multi-lane turn because it "d[id] not believe that the average person knows whether or under what circumstances it is appropriate for a driver of a commercial vehicle to use a red light in th[is] manner." Roberts v. Sunbelt Rentals, Inc., 5:14-cv-40, 2016 WL 1259414, at *1, 9 (W.D. Va. Mar. 30, 2016). In Hatten v. Sholl, likewise, the district court admitted an expert opinion as to the standard of care for "backing up tractor rigs" in part because juries are "unlikely to have knowledge of the special procedures involved in reversing a 50,000 ton tractor." Hatten v. Sholl, 3:01-cv-31, 2002 WL 236714, at *3-4 (W.D. Va. Feb. 13, 2002). On the other hand, in Pitt Ohio Express, LLC v. Pat Salmon & Sons, Inc., the Fourth Circuit held that the district court was within its discretion to exclude expert testimony on the standard of care in a case involving a straightforward series of collisions caused by vehicles, including trucks, driving at various speeds in foggy conditions. Pitt Ohio Express, LLC v. Pat Salmon & Sons, Inc., 532 F. App'x 439, 440, 442 (4th Cir. 2013) (per curiam). It approved of

the district court's statement "that the jury was best positioned to 'decide from the evidence whether someone was driving too slow or too fast or was otherwise negligent'" in the circumstances at issue. Id. at 442.

Considering the foregoing authorities, the Court agrees with the parties that this case is complex enough to trigger the expert testimony rule. Most laypersons, even those experienced in driving personal vehicles, would likely not be familiar with the proper method of navigating a fully-loaded cement truck, weighing more than 50,000 pounds, through a steer tire failure. This conclusion is supported by Defendants' expert Gary Holbrook, who states that commercial drivers should be trained in how to handle tire disablements in trucks and that "even many years of experience" driving trucks "cannot substitute for proper driver training." See Defs.' Opp'n Ex. E *5-6.[5] Thus, this case is more like Roberts and Hatten, where the truck maneuvers at issue were technical, complex, and unfamiliar to the average person, than it is like Pitt, which involved the more common issue of drivers' responses to inclement weather. Accordingly, the Court accepts the parties' view that the standard of care here is "beyond the realm of common knowledge and

---

[5] Where exhibits do not contain pagination, the Court provides a "star" cite to the page number within the case file.

12

experience of a lay jury" and hence properly the subject of expert testimony. See Nichols, 441 S.E.2d at 3.

> ### 2. The Expert Testimony Rule Requires Expert Evidence as to the Standard of Care in this Case, Which Defendants Have not Presented

The next issue is whether Defendants have satisfied the expert testimony rule or, alternatively, whether the rule leaves any room for Defendants' claimed exception based on the CDL Manual. Defendants have not done so and the rule is not nearly as flexible as they contend.

As an initial matter, the Court notes that there are but two exceptions to the expert testimony rule. See Seaward Int'l, Inc. v. Price Waterhouse, 391 S.E.2d 283, 287 (Va. 1990). The first dispenses with the rule where some distinct aspect of a normally complex matter "clearly lies within the range of the jury's common knowledge and experience." Nichols, 441 S.E.2d at 3. The second renders experts unnecessary where standards of conduct "have ripened into rules of law." Seaward, 391 S.E.2d at 287. Neither, however, applies here.[6]

---

[6] As to the first exception, it is inapposite because, even assuming arguendo that some facet of this case could be considered non-technical, the relevant issue, i.e., the standard of care, is complex. As to the second, this exception is inapplicable because it is only triggered where the law imposes "binding standards which are not left to the exercise of professional judgment." Spainhour v. B. Aubrey Huffman & Assocs., Ltd., 377 S.E.2d 615, 619 (Va. 1989) (emphasis added). Examples of requirements that fall into this category include the duty of a lawyer "to convey [a] settlement offer to [her] client," of a broker "to convey [an] offer promptly to [a]

13

And the fact that these limited circumstances define the scope of exceptions is unhelpful to Defendants' position.

The application of the expert testimony rule, moreover, is otherwise stringent. Once activated, it applies to <u>all</u> technical elements of the claim, including duty, breach, and causation. See <u>Nichols</u>, 441 S.E.2d at 3; <u>Seaward</u>, 391 S.E.2d at 287. Hence, a claim will fail where experts do not opine as to the standard of care, even if they do "state opinions concerning deviation from the appropriate standard of care as well as proximate causation." See <u>Raines v. Lutz</u>, 341 S.E.2d 194, 196-97 (Va. 1986).

Additionally, an expert must specifically "set forth" or "define" the standard of care. See <u>Sharpe v. United States</u>, 230 F.R.D. 452, 460-61 (E.D. Va. 2005); <u>Seaward</u>, 391 S.E.2d at 287. The standard cannot be left to speculation or inferred merely from a party's conduct or its consequences. See <u>Sharpe</u>, 230 F.R.D. at 460-61;

---

seller," and of a surveyor "to follow [the] rule that monuments prevail over acreage measurements" absent contrary intent. <u>Id.</u>; <u>Seaward</u>, 391 S.E.2d at 287. The proper method of navigating a truck tire blowout, however, is not governed by such clear cut and binding rules. <u>See, e.g.</u>, 49 C.F.R. §§ 392.1-392.82 (enumerating rules governing the operation of commercial vehicles); 49 C.F.R. § 383.131(a)(1) (obliging states to provide an "information manual" to CDL applicants but not setting any particular driver conduct requirements); 49 C.F.R. § 383.111(a)(14) (requiring drivers to know "when and how to make emergency maneuvers" but not imposing a clear rule concerning how specifically to react). Nor does it bear meaningful resemblance to the aforementioned examples, given that the correct response to a driving emergency inherently varies with the circumstances of each incident and is thus best informed by "professional judgment."

14

_Seaward_, 391 S.E.2d at 287; _Nelson v. Virginia_, 368 S.E.2d 239, 245-46 (Va. 1988). In _Sharpe_, for instance, this Court determined that no expert had expressly described the standard of care in a medical malpractice action. _Sharpe_, 230 F.R.D. at 460. It then noted:

> Perhaps Dr. Hoffman meant the standard of care to be inferred from his bolded references to the actions not taken by the Veterans Affairs Medical Center staff. If this is the case, it is far too opaque and nonspecific to be of evidentiary value. The setting forth of the standard of care is a necessary foundation for an opinion that the defendant's agents breached this standard.

_Id._ at 460-61. Likewise, in _Nelson_, the Supreme Court of Virginia held, in an architecture malpractice action, that no expert had "testified concerning the standard of care expected of an architect in resolving [proposed change orders]" and that an expert's belief that "the total costs of the [change orders] was [sic] disproportionate to the contingency set aside" was insufficient. _Nelson_, 368 S.E.2d at 246.

This limitation on inferences, furthermore, even applies to external standards or authorities that could, as a practical matter, offer insights into the standard of care. _See Seaward_, 391 S.E.2d at 287; _Raines_, 341 S.E.2d 196-97. In _Seaward_, for example, the court required expert testimony in an accounting malpractice case because "[t]he definition of 'generally accepted auditing standards,' and the application of that definition to the facts of a particular case,

15

are matters beyond the common knowledge of laymen." Seaward, 391 S.E.2d at 287. Similarly, in Raines, the court did not permit "the written opinion of a medical malpractice review panel" that found that a dentist had violated the prevailing standard of care to replace expert testimony as to the content of this standard because the panel was not authorized to define it. Raines, 341 S.E.2d at 195-97.

In short, the expert testimony rule demands that an expert set forth each element of a technical negligence claim, including the standard of care.

Given these principles, this is a straightforward case. Defendants cannot prevail on their contributory negligence defense because they have pointed to no experts who actually testify to the standard of care, let alone establish the CDL Manual as this standard.

The report of Gary Holbrook, Defendants' trucking industry expert, examines only whether Benedict was properly trained and whether Essex performed adequate employment screening and supervision. See Defs.' Opp'n Ex. E *5-9. It cites the CDL Manual and other sources in support of this analysis, but it nowhere proffers a standard of care against which a breach of legal duty can be measured. See Defs.' Opp'n Ex. E *5-9. Holbrook's deposition, likewise, states that the CDL Manual outlines "[t]he very basics" of how to respond to a tire failure, suggests that it is one valuable training source (among others), and compares Benedict's actions to

it, but his statements do not indicate that the CDL Manual legally governs Benedict's conduct. See Pl.'s Br. Ex. H 108-12, 122-25.

The report of Donald Tandy, Defendants' accident reconstruction and vehicle controllability expert, is likewise deficient. It describes methods of avoiding accidents and reasons why the crash occurred, tangentially referencing the CDL Manual, but Tandy does not establish the CDL Manual as a standard of care by which to evaluate whether a driver's conduct is negligent. See Defs.' Opp'n Ex. H 4-5. At best, Tandy's report offers conclusions as to the elements of breach and causation, but the standard of care cannot be inferred from those conclusions. See Raines, 341 S.E.2d at 196-97. Tandy's deposition testimony, similarly, never defines the applicable standard. He expresses that there are uniform recommendations as to how to respond to a tire failure, Defs.' Opp'n Ex. M 148, but this comment alone is insufficient. An expert must identify and explain the standard of care applicable to a specific case notwithstanding the existence of even uniform guidance. See Seaward, 391 S.E.2d at 287, 287 n.3 (observing that an expert must define the standard of care even though the alleged negligence involved a failure to follow generally accepted auditing standards). And impermissible "speculation" would be required to conclude that the law expects Benedict to follow these recommendations and to have done so without

variation under the circumstances of this particular accident. See Nelson, 368 S.E.2d at 245; Raines, 341 S.E.2d at 197.

Mindful of the defects on their own side of the contributory negligence issue, Defendants have sought to rely on the reports and deposition testimony of Benedict's experts. See Def.'s Opp'n 1, 4-8; Nov. 20, 2017 Hr'g Tr. 11-25. Assuming for the moment that, from a procedural standpoint, Defendants could use those sources to defeat Benedict's motion for partial summary judgment, Defendants are in error on their substantive import.

First, Defendants point to the testimony of Stephen Chewning, Benedict's crash analysis and motor carrier expert. See Defs.' Opp'n 4-5. Although Chewning's report states that Benedict's actions "were consistent with the Virginia CDL Manual and safe driving principals [sic]" and that Benedict's "actions were exactly what he should have done," the report does not elaborate on the criteria for testing a driver's negligence or indicate that the CDL Manual delineates the content of Benedict's legal duty. See Defs.' Opp'n Ex. C 9-10. And it certainly does not define a standard of care for a contributory negligence defense. His deposition testimony largely just makes similar statements and discusses ways of navigating a tire failure. See Defs.' Opp'n Ex. D 60, 65, 94, 96, 122. Indeed, the only statement even arguably suggesting that the CDL Manual could be the standard of care is Chewning's comment that he compared Benedict's testimony

to the CDL Manual and "otherwise [he] didn't know what [he'd] compare it to," which was offered in response to a question about the literature he reviewed in formulating his opinion. See Defs.' Opp'n Ex. D 144-45. Chewning's lack of knowledge as to relevant sources, however, does not substitute for expert testimony affirmatively defining and describing the controlling standard of care in this case. See Seaward, 391 S.E.2d at 287; Raines, 341 S.E.2d at 196-97.

Second, Defendants cite the testimony of Mickey Gilbert, Benedict's expert designated to rebut Tandy's opinion. See Defs.' Opp'n 7. His report, however, says nothing about the standard of care. See Defs.' Opp'n Ex. I 22-23. Gilbert's deposition testimony does not do so either, and it further indicates that the CDL Manual is of little significance to him. See Defs.' Opp'n Ex. J 196-98. Gilbert even suggests, moreover, that the CDL Manual could not possibly define the standard of care in all cases because there are circumstances in which following its advice is simply "beyond what a person can do." See Defs.' Opp'n Ex. J 198-99.

Third, Defendants highlight the testimony of Brooks Rugemer, Benedict's expert designated to rebut Holbrook's opinion. See Defs.' Opp'n 8. But Rugemer's report identifies no standard of care. Rather, it mainly counters Holbrook's report, which itself does not set any standard, and Rugemer cites the CDL Manual primarily to refute Holbrook's analysis of Benedict's training. See Defs.' Opp'n Ex. F

19

8-9. Rugemer does maintain that "Benedict's actions and response were reasonable and consistent with this training and the instructions provided by the CDL manuals." Defs.' Opp'n Ex. F 10; see also Defs.' Opp'n Ex. F 14. However, Rugemer does not posit the CDL Manual to be the standard of care and, indeed, even notes that "[t]here is no regulatory duty or requirement, nor any industry custom or practice, to use the entry-level instruction of the CDL Manual as a resource to train experienced truck drivers like Mr. Benedict." See Defs.' Opp'n Ex. F 9.

Moreover, Defendants' argument that expert testimony is unnecessary because the CDL Manual alone sets the standard of care is unfounded. See Defs.' Opp'n 12-13. As an initial matter, the view that external guidance, standing alone, can define the relevant duty is wholly inconsistent with the expert testimony rule. See Sharpe, 230 F.R.D. at 460-61; Seaward, 391 S.E.2d at 287; Nelson, 368 S.E.2d at 245-46; Raines, 341 S.E.2d at 196-97. And the only authority Defendants cite to support their position, Hatten, in reality offers no support whatsoever. See Defs.' Opp'n 13. Notwithstanding Defendants' clever and, frankly, cavalier use of quotations, see Defs.' Opp'n 13 ("If federal, state and commercial materials on truck driving all discuss proper practice[], it is reasonable for an expert to use those practices as the basis, or standard of care, upon which to measure the actions and testimony of [a party]."(quoting Hatten,

20

2002 WL 236714, at *4)), even a cursory reading of <u>Hatten</u> reveals that the court permitted an <u>expert</u> to testify as to the trucking standard of care and "to look to federal, state, and commercial publications on the subject" <u>to develop his opinion</u>, <u>Hatten</u>, 2002 WL 236714, at *3-4.

Even if this Court were somehow able to overlook the dearth of legal authorities favoring Defendants, their argument would still fail. Defendants contend that the CDL Manual can set the standard of care because, even if it has not been formally designated as the prevailing standard, it is the "undisputed" standard, given that "the experts on both sides of this case rely on it to establish what Plaintiff should have done." <u>See</u> Defs.' Opp'n 12-13. This claim, however, is unpersuasive. The CDL Manual is merely one of several sources consulted by the experts in arriving at their opinions, and they do not universally treat it as the touchstone of what Benedict was expected to do.

Holbrook's report, for instance, refers not only to the CDL Manual, but also to instructional videos that "provide [a] good illustration of the proper driver's response to a tire failure" as well as a laundry list of other materials. Defs.' Opp'n Ex. E *2-3, 5. Tandy's report, similarly, is mainly based on the results of his own testing and evaluation of crash-site evidence, rather than the CDL Manual, and it too relies on a broad variety of sources. Defs.'

21

Opp'n Ex. H 2-6. His conception of how to respond to a tire failure, moreover, actually conflicts with the CDL Manual; he believes that counter-steering against the drag of a flat tire is necessary and "uniformly" recommended, but no such guidance appears in the CDL Manual. Compare Defs.' Opp'n Ex. H 4-5, and Defs.' Opp'n Ex. M 148, with Pl.'s Br. Ex. I 34. Furthermore, although Chewning does compare Benedict's conduct to the CDL Manual, even he clarifies that his opinion is based on diverse sources, such as "evaluation of materials, personal inspection, education, training, professional certifications and more than 40 years of field experience." Defs.' Opp'n Ex. C 9-10; Defs.' Opp'n Ex. D 60, 65, 145. And Gilbert hardly relies on the CDL Manual at all. See Defs.' Opp'n Ex. I 10-23; Defs.' Opp'n Ex. J 196-99. Lastly, Rugemer's report mainly responds to Holbrook and his sources, and, as noted above, claims that an experienced driver need not even be trained using the CDL Manual. See Defs.' Opp'n Ex. F 6-10.

In sum, it is clear from the record that Defendants have failed to produce any expert evidence of the standard of care applicable to Benedict's conduct, and they have not shown that an exception to the expert testimony rule is warranted. Accordingly, summary judgment on the defense of contributory negligence is appropriate. Furthermore, given that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

22

all other facts immaterial," it is not necessary to address whether there is sufficient evidence of breach and causation. See Celotex, 477 U.S. at 322-23.

**B.    Negligence Per Se**

A secondary matter to be resolved is whether, the foregoing analysis notwithstanding, Benedict's motion can be defeated on the ground that negligence per se sustains Defendants' defense. Defendants maintain, incorporating by reference the superseding negligence arguments in their brief supporting their own motion for summary judgment, that Benedict was negligent per se because he was required by regulations to remove any tires with cuts extending to the belts and the subject tire had two such cuts. See Defs.' Opp'n 2 n.1; Defs.' Mem. in Supp. of Mot. for Summ. J. 27-28 [hereinafter Defs.' Summ. J. Br.]. Benedict responds that Defendants cannot show negligence per se because: (1) only one of the cited regulations applies to him; (2) there is no evidence that the cuts preceded the accident; and (3) tire manufacturers are not the beneficiaries of the regulations. See Pl.'s Reply Br. 11-13. Benedict prevails.

**1.    The Relevant Negligence Per Se Concepts and Regulations**

In Virginia, a party seeking to establish negligence per se must demonstrate three elements:

> First, a plaintiff must establish that the defendant violated a statute that was enacted for public safety. Second, the plaintiff must

23

> prove that he <u>belongs to the class of persons</u>
> <u>for whose benefit the statute was enacted</u>, and
> that the <u>harm</u> that occurred <u>was of the type</u>
> <u>against which</u> the statute was designed to
> <u>protect</u>. Third, the plaintiff must prove that
> the statutory violation was a <u>proximate cause</u>
> of his injury.

<u>Halterman v. Radisson Hotel Corp.</u>, 523 S.E.2d 823, 825 (Va. 2000)

(emphasis added) (citations omitted).

As indicated by the quoted passage, a critical aspect of negligence per se is causation. This is equally true when negligence per se is used to show contributory negligence. <u>See</u> <u>Thomas v. Settle</u>, 439 S.E.2d 360, 363 (Va. 1994) ("Even though a plaintiff's violation of a statute . . . ordinarily constitutes negligence, such negligence will not . . . prevent recovery unless the violation was a proximate or concurring cause that contributed directly to the accident."); <u>see also</u> <u>Ex rel. Moses v. Sw. Va. Transit Mgmt. Co.</u>, 643 S.E.2d 156, 160 (Va. 2007). Defendants assert that Benedict violated two regulations: 49 C.F.R. §§ 393.75 and 570.62. Defs.' Summ. J. Br. 27-28. 49 C.F.R. § 393.75 prohibits motor vehicles from being "operated on any tire that . . . [h]as a cut to the extent that the ply or belt material is exposed." 49 C.F.R. § 393.75(a). Similarly, 49 C.F.R. § 570.62 states: "Tire cords or belting materials shall not be exposed, either to the naked eye or when cuts on the tire are probed." 49 C.F.R. § 570.62(d).

## 2. Defendants Cannot Establish the Negligence Element of Negligence Per Se

Defendants are unable to defeat summary judgment, as an initial matter, because they cannot establish the negligence element of negligence per se. They fail to do so for three reasons.

First, as Benedict observes, only one of these regulations even governs Benedict. 49 C.F.R. § 570.62 is inapplicable because it is contained in a code subpart designed "to establish criteria for the inspection of motor vehicles through State inspection programs." See 49 C.F.R. § 570.52. That subpart "is intended to be implemented by States" and "does not in itself impose requirements on any person." 49 C.F.R. § 570.53. Defendants must therefore rest their negligence per se claim on 49 C.F.R. § 393.75 alone. See 49 C.F.R. § 393.1.

Second, as Benedict correctly argues, Defendants have not demonstrated when the cuts to the subject tire occurred, and without such a showing, they cannot establish that Benedict violated 49 C.F.R. § 393.75. The only evidence that Defendants present in their initial summary judgment brief is the deposition testimony of Benedict's tire expert, David Southwell. Defs.' Summ. J. Br. 8, 27. It merely states, however, that the cuts exist; it does not show that the cuts were created before the accident. See Defs.' Summ. J. Br. Ex. B 30-31.

In their reply summary judgment brief, Defendants seek to correct that deficiency by pointing to the report of Joseph Grant,

Defendants' tire expert. See Defs.' Reply in Supp. of Mot. for Summ. J. 20 [hereinafter Defs.' Summ. J. Reply Br.].[7] Although Grant's report suggests that use of the subject tire with the cuts constitutes a regulatory violation and that a proper inspection would have caught the cuts, nowhere in the segment proffered by Defendants does it actually state that the cuts preceded the accident. See Defs.' Summ. J. Reply Br. Ex. 11 17. Defendants have thus cited no affirmative opinions as to when the cuts emerged.

Third, there is evidence indicating that the cuts did not materialize before the accident. Benedict points to his pre-trip inspection report, which states that he checked his tires for cuts on the date of the accident and found none. Pl.'s Reply Br. 11; Pl.'s Reply Br. Ex. K. Benedict also highlights his own deposition testimony, in which he maintains that he inspected his tires on at least a daily basis. Pl.'s Reply Br. 11; Pl.'s Reply Br. Ex. I 106-08, 113-15.

In sum, Defendants have not shown negligence. Without evidence of when the cuts emerged, Defendants cannot prove that the truck was ever operated with tire cuts that exposed the belts. See 49 C.F.R. § 393.75(a).

---

[7] The reply is considered because Defendants incorporated their summary judgment papers as part of the briefing on this motion. That procedure is improper but the argument will be addressed to put an end to yet another meritless assertion.

### 3. Defendants Cannot Establish the Causation Element of Negligence Per Se

Defendants' position is also unsustainable because they cannot demonstrate that the cuts in the subject tire were the proximate cause of Benedict's injuries. There are two reasons for this conclusion.

First, Defendants have presented no evidence as to the timing of the cuts, and that precludes any finding as to proximate cause. If the cuts did not precede the accident, there can be no causal relationship between them and it.

Second, even assuming such evidence existed, Defendants have neglected to address how this evidence would satisfy the requirements of proximate causation. Defendants' main contention is that if the subject tire had been removed, as the regulations require, the accident would not have occurred. See Defs.' Summ. J. Br. 27-28; Defs.' Summ. J. Reply Br. 20-21. But this contention, without more, is not enough because a "simplistic 'but for' argument does not resolve the proximate cause question." See Banks, 348 S.E.2d at 283.

Defendants, however, have not offered "more." They do not, for example, offer evidence that the subject tire's failure was a result of the cuts themselves. And they do not provide any reasoning or authority supporting the proposition that a wholly non-contributing factor could be a legal cause of harm. Indeed, Defendants have presented no explanation whatsoever as to how Benedict's alleged regulatory violation is a proximate cause of the accident. The Court,

therefore, will not attempt to divine whether there is any hypothetical argument that could sustain Defendants' position. See, e.g., Simms v. Hagel, 3:14-cv-433, 2015 WL 5020894, at *5 (E.D. Va. Aug. 20, 2015); Eady v. Veolia Transp. Servs., Inc., 609 F. Supp. 2d 540, 559 (D.S.C. 2009). Cf. Aikens v. Ingram, 652 F.3d 496, 506 (4th Cir. 2011) (Diaz, J., concurring) ("[I]t is not the role of the district court to act as a roving advocate, providing legal arguments to the parties before it."); Walker v. Prince George's Cty., 575 F.3d 426, 429 n.1 (4th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991))). It especially refuses to do so with respect to an issue like proximate causation, which is an intricate concept requiring an analysis of "logic, common sense, justice, policy and precedent." See Banks, 348 S.E.2d at 283 (quoting Scott, 51 S.E.2d at 253).

Furthermore, the only authority Defendants rely on to support their position, Cooper v. Ingersoll Rand Co., 628 F. Supp. 1488 (W.D. Va. 1986), offers no guidance as to how to resolve the proximate cause issue in this case. See Defs.' Summ. J. Br. 27-28. In Cooper, the court found negligence per se where, in violation of a regulation, a mining machine was not shut off during repairs and, because of alleged defects, restarted and could not be stopped quickly enough to prevent the machine's rippers from inflicting a fatal injury.

*Cooper*, 628 F. Supp. at 1489-90, 1493-94, 1496. There, the failure to disconnect the machine was the proximate cause of the harm and that negligence "intervened and superseded all, if any, antecedent negligence on [the machine manufacturer's] part." *Id.* at 1494.

In *Cooper*, however, it was incontrovertible that the regulatory violation, *i.e.*, the failure to power off the machine, actually contributed to the harm by providing power to the rippers. See *Cooper*, 628 F. Supp. at 1489-90. The violation, in other words, was not a mere but for cause of the injury. And, moreover, the court provided little explanation as to *why* the violation was a proximate cause, having focused instead on whether it was an intervening and superseding cause. See *id.* at 1494, 1496. We therefore cannot know whether the *Cooper* court would have reached the same result if the violation had in no way produced the harm. Accordingly, *Cooper* offers no help in this case, in which there is no evidence that the cuts at all contributed to the injury other than by triggering an obligation to remove the subject tire from service.[8]

---

[8] It is not necessary to consider Benedict's contention that Defendants' cited regulations, 49 C.F.R. §§ 393.75, 570.62, do not run to the benefit of tire manufacturers.

## IV. CONCLUSION

For the foregoing reasons, this Court granted Benedict's MOTION FOR SUMMARY JUDGMENT (ECF No. 52).

It is so ORDERED.

                                        /s/  *REP*
                          _____
                          Robert E. Payne
                          Senior United States District Judge


Richmond, Virginia
Date: February _6_, 2018