

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT BENEDICT,

    Plaintiff,

v.                                      Civil Action No. 3:17-cv-109

HANKOOK TIRE COMPANY
LIMITED, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on HANKOOK TIRE COMPANY LIMITED AND HANKOOK TIRE AMERICA CORPORATION'S MOTION TO AMEND JUDGMENT BASED ON CLEAR ERROR OF LAW (ECF No. 367). Defendants' motion was denied by ORDER (ECF No. 391) dated February 28, 2018. This Memorandum Opinion sets out the reasoning for that decision.

## BACKGROUND

In this products liability action, Robert Benedict sues Hankook Tire Company Limited ("HTCL") and Hankook Tire America Corporation ("HTAC") for the production and distribution of an allegedly defective tire. Defendants seek reconsideration of the Court's previous ORDER (ECF No. 221) and Memorandum Opinion (ECF No. 341) (hereinafter "Original Opinion") granting Benedict's motion for summary judgment as to Defendants' contributory negligence defense.

I.  **Factual Context**

The relevant facts are set out in the Original Opinion (ECF No. 341) that Defendants ask the Court to reconsider, and the Court assumes familiarity with the facts as presented therein. In short, however, this action involves a single-vehicle accident that occurred when the front right tire of a cement truck driven by Benedict suffered a tread separation and the truck thereafter collided with an embankment on the side of the road. (ECF No. 341). The following passage from the Original Opinion is also worth highlighting:

> At the time of the accident, the 2014 Virginia Commercial Driver's License Manual (the "CDL Manual"), published by the Virginia Department of Motor Vehicles, was in effect. It apprises commercial drivers of "important information that [they] must know to operate [their] vehicle[s] in a safe and professional manner." It advises drivers facing a tire failure to:
>
> > **Hold the steering wheel firmly.** If a front tire fails, it can twist the steering wheel out of your hand. Keep a firm grip on the steering wheel with both hands at all times.
> >
> > **Stay off the brakes.** Braking when a tire has failed could cause you to lose control. Unless you are about to run into something, stay off the brake until the vehicle has slowed down. Then, brake gently and pull off the road.
> >
> > **Check the tires.** Even if the vehicle seems to be handling normally. Many times

2

> you won't know that a dual tire is flat
> unless you look at it.

(ECF No. 341) (citations omitted).

## II. Procedural History

Benedict initially asserted three claims: (1) products liability negligence (including manufacturing defect, design defect, and failure to warn); (2) breach of the implied warranty of merchantability; and (3) breach of the implied warranty of fitness for a particular purpose. First Am. Compl. 5-11. As of the filing date of Defendants' motion for reconsideration, Benedict is pursuing only a negligent manufacturing claim against HTCL and an implied warranty of merchantability claim against HTCL and HTAC. Second Am. Compl. 4, 6.[1]

In October 2017, Benedict moved for partial summary judgment to bar Defendants' contributory negligence defense. The Court granted Benedict's motion at a hearing held on November 20, 2017, Nov. 20, 2017 Hr'g Tr. 152, and it issued an ORDER (ECF No. 221) on November 27, 2017 and a Memorandum Opinion (ECF No. 341) on February 6, 2018 formalizing its decision.

On December 4, 2017 (before the Court released the Original Opinion setting forth the reasoning for its decision), Defendants moved for reconsideration on the ground that the Court had made a

---

[1] Just before trial, Benedict voluntarily dismissed the implied warranty claim.

clear error of law. On December 5, 2017, the Court denied this motion as premature, but it permitted Defendants to seek reconsideration again after the release of the Court's Opinion. (ECF No. 226). Accordingly, Defendants filed the present motion on February 20, 2018.

**DISCUSSION**

**I. The Proper Ground For Seeking Reconsideration**

Defendants move for reconsideration on the authority of Federal Rule of Civil Procedure 59(e), which allows a court "to alter or amend a judgment" based on a motion filed "no later than 28 days after the entry of the judgment." See Defs.' Br. 1, 3-4; Fed. R. Civ. P. 59(e); United States v. Danielczyk, 917 F. Supp. 2d 573, 575-76 (E.D. Va. 2013). They also point to Rule 60(b), which allows a court to "relieve a party . . . from a final judgment, order, or proceeding" on a more extended timeline. See Defs.' Br. 3-4; Fed. R. Civ. P. 60; Danielczyk, 917 F. Supp. 2d at 575.

Neither of these Rules, however, is the proper vehicle for seeking reconsideration here. As the District of Maryland has explained:

> Orders are only susceptible to reconsideration under Rules 60(b) and 59(e) if they constitute "final judgments." See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991) ("Rule 60(b) [is] not available for relief from an interlocutory order. Rule 59(e) is equally

4

> applicable only to a final judgment"). Judgments are generally only final where they adjudicate and resolve <u>all</u> claims as to the parties. See <u>Millville Quarry Inc. v. Liberty Mut. Fire Ins. Co.</u>, 217 F.3d 839, *3 (4th Cir. 2000) (unpublished). An order dismissing fewer than all claims is not a final judgment for which a Rule 60(b) or 59(e) motion is appropriate, but rather an interlocutory motion [sic] that may be contested under Rule 54(b).

<u>Moore v. Lightstorm Entm't</u>, 11-3644, 2013 WL 4052813, at *3 (D. Md. Aug. 9, 2013). Defendants' motion seeks reconsideration of a decision granting partial summary judgment as to a defense; such a decision certainly does not "adjudicate and resolve <u>all</u> claims as to the parties." See <u>id.</u> "The Fourth Circuit has made clear that where, as here, the entry of <u>partial</u> summary judgment fails to resolve all claims in a suit, Rule 54(d) [sic]—not Rule 59(e) or 60(b)—governs a motion for reconsideration." <u>Netscape Commc'ns Corp. v. ValueClick, Inc.</u>, 704 F. Supp. 2d 544, 546 (E.D. Va. 2010); see also <u>Al Shimari v. CACI Int'l, Inc.</u>, 933 F. Supp. 2d 793, 798 (E.D. Va. 2013). Therefore, the Court construes Defendants' motion as a motion for reconsideration under Rule 54(b) rather than under Rules 59(e) or 60(b).

Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

5

This Court has described the standards applicable to Rule 54(b) motions in the following way:

> The resolution of motions to reconsider pursuant to Rule 54(b) is "committed to the discretion of the district court," which may be exercised "as justice requires." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). The Fourth Circuit has made clear that the standards governing reconsideration of final judgments are not determinative of a Rule 54(b) motion. Id. at 515. Yet, many courts in this circuit have appropriately considered those factors in guiding the exercise of their discretion under Rule 54(b). See Al Shimari v. CACI Int'l, Inc., 933 F. Supp. 2d 793, 798 (E.D. Va. 2013); see also In re C.R. Bard, Inc., No. 2:11-cv-00114, 2013 WL 2949033, at *2 (S.D. W. Va. June 14, 2013) ("[A]lthough a 'motion for reconsideration under Rule 54(b) is not subject to the strictures of a Rule 60(b) motion,' this district has been 'guided by the general principles of Rules 59(e) and 60(b)' in determining whether a Rule 54(b) motion should be granted." (citation omitted)). Courts generally do not depart from a previous ruling unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Am. Canoe Ass'n, 326 F.3d at 515 (citation omitted).

Zaklit v. Global Linguist Solutions, Inc., 1:14-cv-314, 2014 WL 4161981, at *2 (E.D. Va. Aug. 19, 2014); see also Evans v. Trinity Indus., Inc., 148 F. Supp. 3d 542, 544 (E.D. Va. 2015); Al Shimari, 933 F. Supp. 2d at 798. "Absent a significant change in the law or the facts since the original submission to the court, granting a

motion for reconsideration is only appropriate where, for example, the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" Evans, 148 F. Supp. 3d at 544 (citations omitted).

Motions for reconsideration are not lightly granted, and "the Court exercises its discretion to consider such motions sparingly." See Shanklin v. Seals, 3:07-cv-319, 2010 WL 1781016, at *2 (E.D. Va. May 3, 2010); see also Wootten v. Virginia, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). This Court has characterized such motions as an "extraordinary remedy." See Mohamed v. Holder, 1:11-cv-0050, 2015 WL 11121994, at *3 (E.D. Va. Dec. 18, 2015); Zaklit, 2014 WL 4161981, at *2 (citations omitted). Indeed, the type of concerns that would warrant reconsideration "rarely arise and the motion to reconsider should be equally rare." Evans, 148 F. Supp. 3d at 544 (citations omitted); Zaklit, 2014 WL 4161981, at *2 (citations omitted).

Consequently, there are substantial limitations on the use of motions for reconsideration. For instance, "[a] party's mere disagreement with the district court's ruling does not warrant a motion for reconsideration." Zaklit, 2014 WL 4161981, at *2; see also Herndon v. Alutiiq Educ. & Training, LLC, 2:16-cv-72, 2016 WL 9450428, at *2 (E.D. Va. Aug. 15, 2016) ("Mere disagreement with a court's application of the law does not support a motion for

reconsideration." (citations omitted)). Likewise, "[c]ourts do not entertain motions to reconsider which ask the Court to 'rethink what the Court had already thought through—rightly or wrongly.'" S. Coal Corp. v. IEG Pty, Ltd., 2:14-cv-617, 2016 WL 393954, at *2 (E.D. Va. Jan. 29, 2016) (citations omitted). "Moreover, 'the court should not reevaluate the basis upon which it made a prior ruling, if the moving party merely seeks to reargue a previous claim.'" Evans, 148 F. Supp. 3d at 544 (citations omitted). Finally, "such motions should not be used 'to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.'" Zaklit, 2014 WL 4161981, at *2 (citations omitted); see also Intelligent Verification Sys., LLC v. Microsoft Corp., 2:12-cv-525, 2015 WL 12723143, at *2 (E.D. Va. Feb. 25, 2015) ("Courts will not typically reconsider an interlocutory order where the motion to reconsider simply seeks to present a better and more compelling argument that the party could have presented in the original briefs." (citations omitted)). The Western District of Virginia has articulated some of these limits well, stating:

> Critically here, reconsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial "second bite at the apple" to a dissatisfied litigant. It is "inappropriate where it merely reiterates previous arguments."

8

> It is not an occasion "to present a better and more compelling argument that the party could have presented in the original briefs" or to "introduce evidence that could have been addressed or presented previously." Aggrieved parties may not "put a finer point on their old arguments and dicker about matters decided adversely to them." In sum, "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider."

Wootten, 168 F. Supp. 3d at 893 (citations omitted).

## II. The Contributory Negligence Decision

The Court assumes familiarity with its Memorandum Opinion (ECF No. 341) describing its reasoning for granting Benedict's motion for summary judgment as to Defendants' contributory negligence defense. To the extent that the Original Opinion is relevant to the following analysis, it is incorporated here by reference. In summary, however, the Court held, in relevant part, that Defendants were required by Virginia's "expert testimony rule" to establish the standard of care in this case by expert testimony, that they had failed to do so, and that Defendants could not avail themselves of any exception to the rule. (ECF No. 341).

## III. Analysis Of Defendants' Arguments

Defendants seek reconsideration on the ground that the Court committed a clear error of law, which is most analogous to a claim that "the prior decision was clearly erroneous and would work manifest injustice." See Defs.' Br. 15; Zaklit, 2014 WL 4161981, at

*2 (citations omitted). As set forth below, the Court rejects each of Defendants' arguments as to why the Court should reconsider its previous decision.[2]

### A. The Argument That The CDL Manual Satisfies The Exception To The Expert Testimony Rule For Standards Of Conduct That Have Ripened Into Rules Of Law

Defendants' first argument, in essence, is that the CDL Manual satisfies the exception to the expert testimony rule, described in the Original Opinion, that applies when "standards of conduct 'have ripened into rules of law.'" (ECF No. 341) (citations omitted); see Defs.' Br. 2, 5-8; see also Defs.' Br. 13-14; Defs.' Reply Br. 3. They maintain that the CDL Manual[3] is referenced by a federal regulatory framework, specifically that reflected in 49 C.F.R. §§ 383.111 and 383.131, in such a way as to require this conclusion. See Defs.' Br. 2, 6-8.

Defendants' argument, however, was addressed by the Original Opinion wherein the Court explicitly held that the "rules of law"

---

[2] The Court rejects Defendants' motion primarily on procedural grounds, so it only minimally addresses the merits of Defendants' arguments. But, even on the merits, the Court would deny Defendants' motion. None of the points raised by Defendants convinces the Court that the Original Opinion was in any way erroneous. Thus, although the Court recognizes that its "ultimate responsibility . . . is to reach the correct judgment under law," it has done so here. See Netscape Commc'ns Corp., 704 F. Supp. 2d at 547 (citations omitted).

[3] As discussed in the Original Opinion, the parties have pointed to two separate CDL Manuals, which do not differ in any meaningful way in terms of substance. (ECF No. 341). Again, the distinctions between these CDL Manuals in no way affect the reasoning herein.

exception is inapposite in this case. (ECF No. 341). And, the very regulations that Defendants cite to support their claim that this exception applies, 49 C.F.R. §§ 383.111 and 383.131, were cited by the Court <u>for the opposite proposition</u>. (ECF No. 341). Defendants are therefore moving for reconsideration based on "mere disagreement with the district court's ruling," see <u>Zaklit</u>, 2014 WL 4161981, at *2, and to ask this Court "to 'rethink what [it has] already thought through,'" see <u>S. Coal Corp.</u>, 2016 WL 393954, at *2 (citations omitted). These are impermissible grounds for such a motion.

Moreover, there is no reason that Defendants could not have presented their argument as to this issue in response to Benedict's motion for summary judgment. Therefore, they are seeking reconsideration "to raise arguments which could have been raised" previously or "to argue a case under a novel legal theory that [Defendants] had the ability to address in the first instance." See <u>Zaklit</u>, 2014 WL 4161981, at *2 (citations omitted). As <u>Wootten</u> so effectively explained, "reconsideration is not meant to . . . provide a party the chance to craft new or improved legal positions . . . or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant," and "[i]t is not an occasion 'to present a better and more compelling argument that the party could have presented in the original briefs.'" <u>Wootten</u>, 168 F. Supp. 3d at 893 (citations omitted). That they cannot do.

### B. The Argument That The CDL Manual Is A Legislative Fact Subject To Judicial Notice

Defendants likewise claim that the CDL Manual is a legislative fact, that it defines the standard of care here in light of its interplay with federal regulations, and that it "should be judicially noticed by the Court and considered when ruling on (and reconsidering) Plaintiff's motion for summary judgment." See Defs.' Br. 8-10; see also Defs.' Reply Br. 4. This contention, however, is simply a repackaged version of (or analytical addition to) the argument that the CDL Manual establishes the governing standard of care on its own because it is referenced by federal regulations. Accordingly, it fails for the same reasons as the argument discussed in the previous section. And, if Defendants wanted the Court to judicially notice the CDL Manual, they should have requested that to have been done when opposing Benedict's motion. See Zaklit, 2014 WL 4161981, at *2; see also Wootten, 168 F. Supp. 3d at 893.[4]

---

[4] Even if the Court were to consider judicially noticing the CDL Manual, moreover, that would not help Defendants. That is because the Court is in no way bound by a party's interpretation of a legislative fact. According to the advisory committee notes to Federal Rule of Evidence 201, which discusses "the view which should govern judicial access to legislative facts," "[i]n determining the content or applicability of a rule of domestic law, the judge is unrestricted in his investigation and conclusion. He may reject the propositions of either party or of both parties. . . . [T]he parties do no more than to assist; they control no part of the process." Fed. R. Evid. 201 advisory committee notes (citations omitted).

12

**C. The Argument That The CDL Manual Satisfies The Exception To The Expert Testimony Rule For Matters Which Are Clearly Within The Jury's Common Knowledge And Experience**

Defendants also argue that the CDL Manual falls into the exception to the expert testimony rule, also described in the Original Opinion, that applies "where some distinct aspect of a normally complex matter 'clearly lies within the range of the jury's common knowledge and experience.'" (ECF No. 341) (citations omitted); see Defs.' Br. 12-13, 15; see also Defs.' Reply Br. 3-4. They claim that "[t]he CDL Manual's instructions for responding to a tire failure are not complex, technical or beyond the understanding of the average juror." Defs.' Br. 12; see also Defs.' Br. 13. Defendants maintain that this case is unlike complex professional

---

Here, the existence of the CDL Manual and the regulations relating to it may well be a "legislative fact." See Roberts v. Sunbelt Rentals, Inc., 5:14-cv-00040, 2016 WL 1259414, at *13 (W.D. Va. Mar. 30, 2016) ("[L]egislative facts [are] facts that do not change from case to case, but instead apply to all cases."). The Court, however, does not perceive it to be a legislative fact that the CDL Manual defines the standard of care here. The relevant regulations simply indicate that states must provide a CDL Manual to CDL applicants, that CDL drivers are required to have certain knowledge and skills, and that a CDL Manual must include information about the required knowledge and skills. See 49 C.F.R. §§ 383.110, 383.111, 383.131. And, a 2016 rulemaking that amended 49 C.F.R. § 383.131 (but "d[id] not make any substantive changes to the affected regulations, except to remove obsolete provisions") explained that "[the Federal Motor Carrier Safety Administration] provides the manual as a reference for States, but does not require any specific manual published after July 2010, nor does it incorporate any manual by reference into the regulations." General Technical, Organizational, Conforming, and Correcting Amendments to the Federal Motor Carrier Safety Regulations, 81 Fed. Reg. 68,336, 68,336, 68,340 (Oct. 4, 2016).

13

negligence malpractice cases, in which the standard of care is "nebulous" and which "do not include an express set of instructions that are approved by a governmental agency, referenced by name and approved in a federal regulation." See Defs.' Br. 12-13.

Defendants' arguments on this issue too were addressed by the Original Opinion. There, the Court expressly concluded that this case is sufficiently complex to trigger the expert testimony rule as to the standard of care question and that the exception now relied upon by Defendants is inapplicable. (ECF No. 341). Thus, this argument is a "mere disagreement" with the Court's decision, see Zaklit, 2014 WL 4161981, at *2, and asks the Court "to 'rethink what [it has] already thought through,'" see S. Coal Corp., 2016 WL 393954, at *2 (citations omitted). Neither is a proper basis for reconsideration.

Furthermore, before pursuing reconsideration, Defendants had actually agreed with Benedict that the standard of care question here is complex enough to fall within the expert testimony rule.[5] In their brief in opposition to Benedict's motion, Defendants stated:

> There is no dispute that expert testimony is required to define the standard of care where the conduct at issue is beyond "ordinary human knowledge and experience." (Pl.'s Mot. at 10.) Likewise, there is no dispute that the operation of a commercial motor vehicle—in this case a cement mixer truck that suffered a tire

---

[5] Nevertheless, the Court evaluated the applicability of the expert testimony rule to ensure that the parties had not reached an erroneous legal conclusion. (ECF No. 341).

14

> disablement—is beyond the ordinary knowledge
> and experience of laymen. (Id. at 10-11.)

Defs.' Opp'n to Pl.'s Mot. for Summ. J. 12 [hereinafter Defs.' Summ. J. Opp'n]. Had Defendants wished to contest whether the standard of care issue is properly subject to the expert testimony rule, they certainly could have done that in their opposition brief instead of conceding the point. The Court cannot now sanction the Defendants' about face in order to allow them "to argue a case under a novel legal theory that [they] had the ability to address in the first instance." See Zaklit, 2014 WL 4161981, at *2 (citations omitted). Again, reconsideration "is not an occasion 'to present a better and more compelling argument that the party could have presented in the original briefs,'" and "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." Wootten, 168 F. Supp. 3d at 893 (citations omitted).

### D. The Argument That Benedict's Testimony Can Provide Evidence Of Negligence

Defendants additionally suggest that Benedict's testimony (especially in conjunction with the CDL Manual and an expert's testimony) can establish all elements of negligence in this case, including the standard of care. See Defs.' Br. 11-14. However, the Court has already held that expert testimony is required to establish the standard of care and that Defendants have proffered no such

15

testimony. (ECF No. 341). As elsewhere, Defendants are improperly endeavoring to wriggle out of this holding based on "mere disagreement" with it, see Zaklit, 2014 WL 4161981, at *2, and to have the Court "rethink what [it has] already thought through," see S. Coal Corp., 2016 WL 393954, at *2 (citations omitted). Likewise, there is no reason that Defendants needed to wait until now to raise or bolster this theory. See Zaklit, 2014 WL 4161981, at *2; see also Wootten, 168 F. Supp. 3d at 893.[6]

### E. The Argument That Benedict Conceded That The CDL Manual Defines The Standard Of Care In This Case

Defendants further contend that Benedict previously conceded that the CDL Manual establishes the applicable standard of care. See Defs.' Br. 11. Defendants do not devote much space to this point, but the Court calls attention to the argument and addresses its merits because it profoundly mischaracterizes the record and is actually quite misleading.

Defendants state in their brief supporting their motion that:

> Even if these manuals were not legislative facts, Plaintiff has already represented to the Court and taken the position that the undisputed standard of care governing how Plaintiff should respond to a tire failure is in the VA CDL

---

[6] Defendants raised a vaguely similar point in their brief in opposition to Benedict's motion, but they did so in the context of discussing the evidence relating to whether Benedict had breached the standard of care. See Defs.' Summ. J. Opp'n 16. Defendants never asserted that Benedict's testimony is relevant to what the standard of care actually is. See Defs.' Summ. J. Opp'n 1-8, 12-13.

> Manual. (Pl.'s Memo. in Support of Mot. for Summary Judgment [Dkt. 53] ("Pl.'s MSJ"), at 7, Undisputed Fact Nos. 32 and 33.) Plaintiff confirmed that these instructions are the standard of care during the hearing on his Motion: "[i]n this case, the standard of care in responding to a tire disablement was the method depicted in the CDL manual." (MSJ Hr'g Tr. at 33:20-21.)

Defs.' Br. 11.

The portion of Benedict's brief in support of his motion for summary judgment cited by Defendants <u>did not</u> represent to the Court that the undisputed standard of care is the CDL Manual. Rather, paragraph 32 (of the "statement of undisputed facts" section) quoted the CDL Manual and observed that: "The Virginia CDL Manual instructs commercial drivers as to the 'important information that [they] must know to operate [their] vehicle in a safe and professional manner.'" Pl.'s Mem. in Supp. of Mot. for Summ. J. 7 [hereinafter Pl.'s Summ. J. Br.] (citations omitted). Then, paragraph 33 (of that same section) set forth the CDL Manual's instructions for responding to a tire failure. Pl.'s Summ. J. Br. 7-8. Benedict proceeded to argue that Defendants had presented no qualified expert testimony defining the standard of care. Pl.'s Summ. J. Br. 12-17.

At the hearing on Benedict's motion, moreover, Benedict <u>did not</u> confirm that the CDL Manual sets the standard of care. Rather, the quote by Benedict's counsel cited by Defendants explained <u>what an expert would need to assert to establish the CDL Manual as the</u>

17

standard of care. See Nov. 20, 2017 Hr'g Tr. 33. The cited statement was made in the following context:

> THE COURT: What is the standard of care?
>
> MR. McBETH: Well, for Mr. Benedict, we haven't articulated a standard of care, because that's an not element that we have a burden of proving in this case.
>
> THE COURT: I didn't ask you that. Let me try it another way. What would they have to do to articulate a standard of care that they haven't done?
>
> MR. McBETH: So they would have to have a qualified expert establish the standard of care and then define --
>
> THE COURT: What would he have to say?
>
> MR. McBETH: In this case, the standard of care in responding to the tire disablement was the method depicted in the CDL manual, or the standard of care was to counter steer 60 degrees, any number of ways, but setting the standard by reference to an approach to the situation and then saying how he failed to achieve that, and that's just not something they have.

Nov. 20, 2017 Hr'g Tr. 33-34 (emphasis added).

In short, Defendants' argument on this point is specious and, therefore, not a ground for reconsideration. It also takes matters in the record so out of context as to be misleading.

## CONCLUSION

For the reasons set forth above, the Court denied HANKOOK TIRE COMPANY LIMITED AND HANKOOK TIRE AMERICA CORPORATION'S MOTION TO AMEND JUDGMENT BASED ON CLEAR ERROR OF LAW (ECF No. 367).

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 4, 2018