**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**



ROBERT BENEDICT,

Plaintiff,

v.                                    Civil Action No. 3:17-cv-109

HANKOOK TIRE COMPANY
LIMITED, et al.,

Defendants.

## MEMORANDUM OPINION

This matter is before the Court on HANKOOK TIRE COMPANY LIMITED'S AND HANKOOK TIRE AMERICA COMPANY'S MOTION TO SEAL CONFIDENTIAL EXHIBITS, TRIAL TRANSCRIPTS, AND JURY INSTRUCTION (ECF No. 433). For the following reasons, the motion will be denied.

## BACKGROUND

In this products liability action, Robert Benedict sued Hankook Tire Company Limited ("HTCL") and Hankook Tire America Corporation ("HTAC") for the production and distribution of an allegedly defective tire. A jury trial was held from March 5, 2018 to March 9, 2018. Defendants' motion seeks to seal trial exhibits, portions of the trial transcript, and part of one jury instruction.

## I. Pre-Trial Confidentiality Orders

Because this action is based on allegations that Defendants produced a defective tire, it implicated Defendants' confidential

product-related information. Accordingly, the Court took several actions before trial to protect that information.

On April 10, 2017, the Court signed the parties' STIPULATED PROTECTIVE ORDER OF CONFIDENTIALITY GOVERNING CONFIDENTIAL INFORMATION (ECF No. 26) [hereinafter Protective Order]. That ORDER was based upon the following findings of fact:

> 1) This action will require the production and use of documents that contain confidential information of the Parties;
>
> 2) A protective order is necessary in this action to protect the Parties' confidential information because disclosure of such information to the public would put the Parties at a commercial disadvantage;
>
> 3) The Parties [sic] interest in sealing confidential information outweighs the public's common law interest in access to such documents based on the following:
>
>> (a) If confidential documents are not sealed, they could be utilized by competitors of the Parties to gain an unfair business advantage; and
>>
>> (b) The public does not already have access to the Parties' confidential information;
>
> 4) This Protective Order is narrowly tailored to serve the Parties' interest in protecting their confidential information in that:
>
>> (a) The Protective Order only provides for the sealing of material that contain [sic] confidential information; and

2

> (b) The Protective Order provides that
> where only parts of materials
> contains [sic] confidential
> information, only those parts of the
> materials are subject to the
> Protective Order;
>
> 5) There are no less drastic alternatives to
> the sealing of confidential documents as
> provided in the Protective Order.

Protective Order 1-2. The Protective Order permitted the parties to designate as "confidential information" "any information believed in good faith to be sensitive personal information, proprietary or confidential research, development, or commercial information." Protective Order 2. Confidential information was defined to include "information that constitutes confidential research, development or proprietary business information that a) is not generally available to others, b) is not readily determinable from other sources, c) has been treated as confidential by the Parties; and d) is reasonably likely to lead to competitive injury if disclosed." Protective Order 3. Information designated as confidential was to be held in confidenence and disseminated to a limited set of persons. Protective Order 5-7. The Protective Order also created procedures for challenging the parties' designations by those who receive purportedly confidential information. Protective Order 8.

The Protective Order broadly covered, inter alia, "all information and materials produced formally; informally; in

3

any . . . document . . . brief, motion, transcript, testimony, or other writing; or through any manner or means of discovery or disclosure in the lawsuit." See Protective Order 2-3. The Protective Order also addressed trial testimony:

> If such CONFIDENTIAL INFORMATION is contained or given in any deposition testimony, trial testimony or any other testimony, the transcript may be designated as containing CONFIDENTIAL INFORMATION in accordance with this Protective Order of Confidentiality by notifying the parties on the record at the time the testimony is given, or in writing within thirty (30) days of receipt of the transcript . . . .

Protective Order 4. Finally, it contemplated encompassing other trial materials, stating that confidential information only may be shown, inter alia, to "[t]he Court, its staff, witnesses and jury in this Lawsuit." See Protective Order 5 (emphasis added).

The Protective Order, however, was self-limiting. It stated that it "is without prejudice to a later determination regarding confidentiality at trial of documents declared 'confidential' pursuant to this Order." Protective Order 5.

The Court also granted several motions, by both parties, to seal exhibits filed with the briefing on various pre-trial motions, including summary judgment motions. These Orders were all granted "for good cause shown, and the requirements of Local Civil Rule 5 and the decisions in Ashcraft, et al. v. Conoco, Inc., 218 F.3d 288 (4th Cir. 2000), In re Knight Publishing Co., 743 F.2d 231 (4th Cir.

4

1984) and Stone v. Univ. of Maryland, 855 F.2d 178 (4th Cir. 1988) having been met." (ECF Nos. 70, 71, 120, 121, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 319, 320, 323, 324, 325, 326).[1]

## II. Trial Confidentiality Protections & Defendants' Motion

Neither party, however, moved to seal any trial exhibits, testimony, or other materials before or at the jury trial. Rather, as explained by Defendants:

> Because [Defendants' confidential information] was already the [sic] subject to the Court's sealing orders pursuant to Local Rule 5 and would not [sic] placed in the record prior to trial, the Parties agreed that the mechanism to ensure that Hankook's confidential information remain protected was to "file a motion to seal after the trial to have certain trial exhibits and portions of the trial transcript placed under seal."

Defs.' Br. 2 (citations omitted).[2]

---

[1] Certain of these Orders included the additional finding that: "and [the plaintiff or the defendants] asserting that the documents requested to be sealed are designated confidential under the STIPULATED PROTECTIVE ORDER OF CONFIDENTIALITY GOVERNING CONFIDENTIAL INFORMATION (ECF No. 26) entered herein." (ECF Nos. 120, 121, 210, 211, 212, 213, 214, 215, 216, 217, 218, 319, 320, 323, 324, 325, 326).

[2] HANKOOK TIRE COMPANY LIMITED'S AND HANKOOK TIRE AMERICA COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO SEAL CONFIDENTIAL EXHIBITS, TRIAL TRANSCRIPTS, AND JURY INSTRUCTION (ECF No. 434) shall be labeled "Defs.' Br."; Plaintiff's MEMORANDUM IN OPPOSITION TO MOTION TO SEAL CONFIDENTIAL EXHIBITS, TRIAL TRANSCRIPTS, AND JURY INSTRUCTIONS (ECF No. 436) shall be labeled "Pl.'s Opp'n"; Defendants' REPLY IN SUPPORT OF HANKOOK TIRE COMPANY LIMITED AND HANKOOK TIRE AMERICA CORPORATION'S MOTION TO SEAL CONFIDENTIAL EXHIBITS, TRIAL

5

That agreement was initiated by Plaintiff on March 1, 2018, four days before the jury trial was set to commence. See Defs.' Br. Ex. A 1. In an e-mail to Defendants, Plaintiff stated:

> Given these are not being filed via ECF, we are not planning on taking on measures to seal them prior to trial. I'm guessing the proper mechanism would be to file a motion to seal after the trial to have certain trial exhibits and portions of the trial transcript placed under seal. Are you in agreement? I just do not want [sic] run into any alleged violation of the protective order by submitting our exhibit binders.

Defs.' Br. Ex. A 1. Defendants represent that they "agreed to Plaintiff's proposal by telephone on the same day the email was received" and that they "received confirmation from Plaintiff during trial that a motion to seal the trial exhibits would with [sic] filed without objection." Defs.' Br. 2 n.1.[3]

---

TRANSCRIPTS, AND JURY INSTRUCTION (ECF No. 454) shall be labeled "Defs.' Reply Br."; Ronnie L. Crosby's MOTION TO INTERVENE AND OBJECTION UNDER LOCAL RULE 5(C) TO HANKOOK TIRE COMPANY LIMITED AND HANKOOK TIRE AMERICA CORPORATION'S MOTION TO SEAL (ECF No. 440) shall be labeled "Intervenor's Br."; Defendants' MEMORANDUM IN RESPONSE TO MOTION TO INTERVENE AND OBJECTION UNDER RULE 5(C) (ECF No. 455) shall be labeled "Defs.' Intervenor Opp'n"; and RONNIE CROSBY'S REPLY TO HANKOOK TIRE COMPANY LIMITED'S AND HANKOOK TIRE AMERICA CORPORATION'S OPPOSITION TO HIS MOTION TO INTERVENE AND OBJECTION UNDER LOCAL RULE 5(C) shall be labeled "Intervenor's Reply Br."

[3] Plaintiff largely agrees with this description of the facts. In Plaintiff's words: "Defendants correctly note that the Parties conferred and agreed that a motion to seal would be treated as timely if made upon conclusion of the trial. . . . Counsel for the Parties also spoke briefly at trial and counsel for Mr. Benedict indicated that Mr. Benedict may not oppose a post-trial motion to seal—although the particulars of this conversation cannot be completely recalled."

Hence, the jury trial proceeded without restrictions on attendance or limitations on the presentation of information. And, on March 9, 2018, all jury instructions were filed publicly in the Court's electronic docket system. According to Defendants, "[a]lthough the final trial exhibits and Jury Instruction No. 27B were available on Friday, March 9, 2018, Hankook did not receive a complete copy of the expedited trial transcript until late afternoon on Friday, March 16, 2018." Defs.' Br. 6. Defendants filed the present motion on Thursday, March 22, 2018.

## III. Defendants' Materials

As noted above, Defendants seek to seal three types of materials: (1) certain trial exhibits; (2) portions of the trial transcript; and (3) part of jury instruction 27B. Defs.' Br. 6-10. These materials are alleged to contain proprietary and confidential tire production information. See Defs.' Br. 6-10, 12-14.

As to the trial exhibits, although all the exhibits at issue in Defendants' motion were admitted into evidence and considered by the jury, only some were actually discussed or displayed openly at trial. That is not standard practice; in a typical case, exhibits

Pl.'s Opp'n 2 n.1. Plaintiff decided to oppose the motion to seal after trial but before Defendants filed their motion, explaining that "after reviewing the controlling authorities, counsel for Mr. Benedict subsequently apprised counsel for Defendants, on March 13, 2018, that Mr. Benedict believed the entirety of the trial transcript should be left unsealed and would oppose any effort to seal the trial transcript." See Pl.'s Opp'n 2 n.1.

are only deemed "admitted" if they are used at trial, and unused exhibits are considered withdrawn. [4] No party addressed the distinction between used and unused exhibits, so the Court does so here. The exhibits that were specifically presented at trial include Defendants' exhibits 8, 9, 11, 12, 13, and 15, and Plaintiff's exhibit 6. See Trial Tr. 169, 177, 471, 479, 525, 528, 530, 538, 558, 560, 571, 718; see also Mar. 5, 2018 Minute Sheet; Mar. 6, 2018 Minute Sheet; Mar. 7, 2018 Minute Sheet; Mar. 8, 2018 Minute Sheet; Mar. 9, 2018 Minute Sheet. The rest were not so presented. [5]

## IV. The Intervention of Ronnie L. Crosby

On March 29, 2018, Ronnie L. Crosby, an attorney for a plaintiff in a wrongful death action pending against Defendants in South Carolina, moved to intervene and object to Defendants' motion to seal. [6] See Intervenor's Br. *1-4; see also Defs.' Intervenor Opp'n 1. By ORDER (ECF No. 473) dated May 9, 2018, the Court granted Crosby's

---

[4] The Court permitted the parties to treat unused exhibits as admitted here because the parties reasonably interpreted language in the JURY INITIAL PRETRIAL ORDER (ECF No. 20) as allowing them to do so.

[5] Plaintiff's exhibit 10 was briefly mentioned at trial out of the presence of the jury. See Trial Tr. 501. It does not appear to have been discussed in any detail or displayed publicly, however, so it will be treated as unused. See Trial Tr. 501.

[6] That wrongful death action involves the failure of a tire similar to that at issue in this case. See Intervenor's Br. *2. Both tires were of the same model type and were manufactured at a similar time. See Intervenor's Br. *2.

8

motion to intervene and ruled that it would consider his papers in assessing Defendants' motion.

## THE RELEVANT STANDARDS GOVERNING THE RESTRICTION OF ACCESS TO COURT MATERIALS

### I.    The Public's Right of Access to Judicial Records

It is well-established that there exists a "right of public access" to "judicial records." See In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290 (4th Cir. 2013) [hereinafter In re Application]. That right "derives from two independent sources: the First Amendment and the common law." Id. "The distinction between the rights of access afforded by the common law and the First Amendment is 'significant,' because the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" Id. (citations omitted). However, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004) (citations omitted). Indeed, "even where . . . all of the litigants support the motion to seal, and even where a public hearing on the question does not bring forth anyone to assert the right of access, a court must still engage in a careful deliberation on the issue." Miles v. Ruby Tuesday, Inc., 799 F. Supp. 2d 618, 622 (E.D.

9

Va. 2011); see also E.D. Va. Loc. Civ. R. 5(C) [hereinafter LCR] ("Agreement of the parties that a document or other material should be filed under seal or the designation of a document or other material as confidential during discovery is not, by itself, sufficient justification for allowing a document or other material to be filed under seal.").

## II. The Common Law Right

"The common law presumes a right of the public to inspect and copy 'all 'judicial records and documents.''" Va. Dep't of State Police, 386 F.3d at 575 (citations omitted). That right operates as a presumption of access to "all judicial records and documents," which "can be rebutted if 'the public's right of access is outweighed by competing interests.'" See In re Application, 707 F.3d at 290 (citations omitted). The burden is on the proponent of sealing. See Level 3 Commc'ns, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 577 (E.D. Va. 2009).

"To substantively overcome the common law presumption of access . . . a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." In re Application, 707 F.3d at 293 (citations omitted); see also id. at 293 n.12; Va. Dep't of State Police, 386 F.3d at 575. As the Fourth Circuit has explained, in performing the common law balancing analysis:

10

[A] court may consider the following factors: "[1] whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; [2] whether release would enhance the public's understanding of an important historical event; and [3] whether the public has already had access to the information contained in the records."

See In re Application, 707 F.3d at 293 (citations omitted); see also Va. Dep't of State Police, 386 F.3d at 575.

## III. The First Amendment Right

The Fourth Circuit has described the First Amendment right of access in the following way:

> In contrast to the common law, "the First Amendment guarantee of access has been extended only to particular judicial records and documents." When the First Amendment provides a right of access, a district court may restrict access "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position.

Va. Dep't of State Police, 386 F.3d at 575 (citations omitted). This Court has held, moreover, that, in the First Amendment context, "the court must weigh and balance the competing interests, much as it does in connection with the common law right"; but, "a more stringent standard governs." Level 3, 611 F. Supp. 2d at 580-81.

It appears that private interests may be "compelling" for

11

purposes of the First Amendment analysis. See Doe v. Public Citizen, 749 F.3d 246, 269 (4th Cir. 2014); see also Level 3, 611 F. Supp. 2d at 580-82. For example, the Fourth Circuit has suggested that "[a] corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records [under the First Amendment]." Doe, 749 F.3d at 269; see also Woven Elecs. Corp. v. Advance Grp., Inc., 930 F.2d 913, 1991 WL 54118, at *6 (4th Cir. 1991) (per curiam) (table). This Court has reached similar conclusions. See Lifenet Health v. Lifecell Corp., 2:13-cv-486, 2015 WL 12517430, at *1, 4 (E.D. Va. Feb. 12, 2015) [hereinafter Lifenet II]; Lifenet Health v. Lifecell Corp., 2:13-cv-486, 2015 WL 12516758, at *1 (E.D. Va. Jan. 9, 2015) [hereinafter Lifenet I]; Adams v. Object Innovation, Inc., 3:11-cv-272, 2011 WL 7042224, at *4 (E.D. Va. Dec. 5, 2011), adopted, 2012 WL 135428, at *1 (E.D. Va. Jan. 17, 2012); RegScan, Inc. v. Bureau of Nat'l Affairs, Inc., 1:11-cv-1129, 2011 WL 5239221, at *2-3 (E.D. Va. Nov. 1, 2011); Level 3, 611 F. Supp. 2d at 580-82.

## IV.  Judicial Records & The Applicable Rights

For either the common law or First Amendment right of access to attach at all, the materials at issue must, at minimum, be "judicial records." In re Application, 707 F.3d at 290-91. The Fourth Circuit has held that "it is commonsensical that judicially authored

12

or created documents are judicial records" and that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." Id. at 290.[7]

Judicial records include, at minimum, documents in evidence at a public jury trial and trial transcripts. See Syngenta Crop Prot., LLC v. Willowood, LLC, 1:15-cv-274, 2017 WL 6001818, at *2 (M.D.N.C. Dec. 4, 2017); Lifenet II, 2015 WL 12517430, at *2; Level 3, 611 F. Supp. 2d at 577-79; see also Va. Dep't of State Police, 386 F.3d at 577; Woven, 1991 WL 54118, at *6; Rambus, Inc. v. Infineon Techs. AG, 3:00-cv-524, 2005 WL 1081337, at *2-3 (E.D. Va. May 6, 2005). It is also clear that both the First Amendment and the common law right apply to these materials. See Syngenta, 2017 WL 6001818, at *2; Lifenet II, 2015 WL 12517430, at *2; Level 3, 611 F. Supp. 2d at 577-79, 588-89; see also Va. Dep't of State Police, 386 F.3d at 576.

## V.   The Loss of Protected Status

It is often the case that materials initially may be protected from dissemination by an order of the court but then subsequently

_____

[7] By way of example, "discovery documents filed in connection with a dispositive motion, such as a motion for summary judgment, [are] subject to the right of access because 'summary judgment adjudicates substantive rights.'" See In re Application, 707 F.3d at 290. (citations omitted). However, "documents not considered by the court but filed with a motion to dismiss" are not subject to the right because those documents "do not play any role in the adjudicative process." See id. (citations omitted).

13

lose that protection. That may happen, for instance, where discovery documents are covered by a protective order but are then filed with dispositive motions. As explained by the Fourth Circuit:

> [I]n Rushford we considered the propriety of a district court's order sealing documents that were attached to a successful summary judgment motion. Although the documents had been the subject of a pretrial discovery protective order, we observed that once the documents were made part of a dispositive motion, they lost their status as being "raw fruits of discovery," and that discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." After noting that summary judgment "serves as a substitute for a trial" and that we had held in a prior case that the First Amendment standard should apply to documents filed in connection with plea and sentencing hearings in criminal cases, we held that "the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case."
>
> Although we recognized that "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion," we stated that the district court must make that determination "at the time it grants a summary judgment motion and not merely allow continued effect to a pretrial discovery protective order." We noted that "[t]he reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents," and we remanded the case to the district court in order for it to determine under the appropriate substantive and procedural standards whether the documents should remain sealed.

14

<u>Va. Dep't of State Police</u>, 386 F.3d at 576-77 (citations omitted).

As suggested by the above passage, the same analysis would apply to materials presented at trial. See <u>Va. Dep't of State Police</u>, 386 F.3d at 576 ("[S]ummary judgment 'serves as a substitute for a trial' . . . ." (citations omitted)). This Court has so held. See <u>Level 3</u>, 611 F. Supp. 2d at 589; <u>Rambus</u>, 2005 WL 1081337, at *2.

Furthermore, it is clear that, in this district, trial materials are not generally protected by previous sealing or protective orders. Under Local Rule 5(H), "[t]rial exhibits, <u>including documents previously filed under seal</u>, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." LCR 5(H) (emphasis added).

## VI. **Waiver of Confidentiality Protections**

This Court and others have taken the view that parties may waive their right to assert the confidentiality of trial materials. See <u>Level 3</u>, 611 F. Supp. 2d at 583-84, 587-88; see also <u>In re Time, Inc.</u>, 182 F.3d 270, 272 (4th Cir. 1999); <u>Littlejohn v. Bic Corp.</u>, 851 F.2d 673, 680 (3d Cir. 1988); <u>Dees v. Cnty. of San Diego</u>, 3:14-cv-0189, 2017 WL 4511003, at *1 n.1 (S.D. Cal. Oct. 10, 2017), <u>appeals docketed</u>, No. 17-56621 (9th Cir. Oct. 25, 2017), No. 17-56710 (Nov. 9, 2017); <u>Certusview Techs., LLC v. S&N Locating Servs., LLC</u>, 198 F. Supp. 3d 568, 588 n.12 (E.D. Va. 2016); <u>Phillips v. C.R. Bard, Inc.</u>, 3:12-cv-344, 2015 WL 3485039, at *2 (D. Nev. June 1, 2015);

Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd., 9-290, 2013 WL 1336204, at *5 (W.D. Pa. Mar. 29, 2013); United States v. Cousins, 858 F. Supp. 2d 614, 618-19, 619 n.8 (E.D. Va. 2012); Pesky v. United States, 1:10-cv-186, 2010 WL 4174670, at *2 (D. Idaho Oct. 19, 2010); Weiss v. Allstate Ins. Co., 6-3774, 2007 WL 2377119, at *3 (E.D. La. Aug. 16, 2007); Rambus, 2005 WL 1081337, at *2-3. As the Level 3 court explained:

> Notwithstanding the need to weigh the competing interests when an effort is made to seal a document in advance of or contemporaneously with its use or filing with a court, an entity seeking to seal such document after its use or admission can be held to have waived its right to assert a continuing interest in the document in opposition to the presumptive right of access. "It is a 'well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use.'"

Level 3, 611 F. Supp. 2d at 583 (citations omitted).

In order to understand the full scope of the "waiver" doctrine, a few examples are instructive. First, the Level 3 court found that waiver had occurred under the following circumstances and based on, inter alia, the following reasoning:

> [The intervenor] was fully aware that certain of its documents, explicitly including one of the exhibits currently at issue, were going to be offered into evidence at trial. Moreover . . . the email correspondence between [the intervenor] and Level 3 shows that

16

[the intervenor] did not "belatedly realize[ ] the impact" of this fact. Instead, [the intervenor's] request to Level 3 demonstrates its awareness of—and concerns about—the issue of confidentiality prior to the commencement of trial, and Level 3's response explicitly notified [the intervenor] of Level 3's unwillingness to comply with that request. Despite the foregoing, [the intervenor] chose not to take any action on its own behalf to raise this issue prior to or contemporaneously with the exhibits at issue being offered and entered into evidence at trial.

. . . .

Here, of course, the proper time for the Court to have addressed any such requests for further judicial protection of the exhibits at issue in the instant motion would have been prior to trial, or at trial—at the time when they were offered into evidence. This Court, consistent with the reasoning of other courts faced with similar circumstances, believes that [the intervenor's] failure to raise this issue prior to or at that time—or, indeed, at any point before filing the instant motion nearly three weeks after the jury's verdict and entry of judgment—constitutes a waiver of any objections to any First Amendment (or, for that matter, common law) right of access to the exhibits. The First Amendment public right of access to these exhibits sprang into existence upon their being offered into evidence for the jury's consideration at trial, and since no request was made to seal them prior to or at that time, [the intervenor] waived any future right to assert any competing interest to be weighed by the Court and, thus, any objection to the public availability of the exhibits in the Court's files.

Level 3, 611 F. Supp. 2d at 587-88 (citations omitted).

Likewise, in Certusview, this Court observed the following:

17

The Court has entered numerous Orders in this matter, ordering certain documents to be sealed. The parties, however, have referred to the contents of a number of these sealed documents throughout their unredacted filings, post-trial briefing, and in open court during the bench trial of this matter. Further, several such sealed documents were entered into evidence and the public record during the bench trial. Therefore, to the extent that the parties have discussed the contents of these sealed documents in their filings, briefings, and in open court, or have entered such documents into evidence, the Court considers the parties' arguments regarding the need for such information to be sealed to have been waived.

Certusview, 198 F. Supp. 3d at 588 n.12 (citations omitted).[8]

Finally, in Cousins, this Court determined:

Similarly, to whatever extent the government argues that the content of the witnesses' testimony must be protected from disclosure to non-parties, the government's request for redaction comes far too late to be meaningful. If the government had significant concerns for the safety of the witnesses in this case based on the content of their testimony, a request to protect or seal their testimony should have come before, or at least during, trial in this case. Instead, the request came at the "twelfth hour." At this late stage, more than ten months after testimony was given without restriction at public trial, the court cannot undo any potential impact of public disclosure of this information.

---

[8] Some of the documents previously sealed in Certusview were exhibits to summary judgment briefs. See Certusview Techs., LLC v. S&N Locating Servs., LLC, 2:13-cv-346 (ECF Nos. 357, 359).

Cousins, 858 F. Supp. 2d at 618-19.[9]

These examples teach several key points. First, each shows that the waiver doctrine applies to prospective attempts to seal documents (i.e., to any argument that the proponent of sealing has an interest in confidentiality that outweighs the public's right of access).[10] Second, as indicated by Certusview, the doctrine applies to materials that were previously sealed (even as exhibits to summary judgment motions).[11] Third, all three examples demonstrate that, as to trial materials, the waiver doctrine is triggered if the proponent of sealing fails to seek protections at or before trial.[12] And, fourth,

_____

[9] This "waiver" analysis was contained within the court's broader discussion of the common law right of access. See Cousins, 858 F. Supp. 2d at 618-20. The court was clearly raising the waiver doctrine, however, as it quoted (in a footnote to the passage cited above) the maxim: "It is a 'well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use.'" See id. at 619 n.8 (citations omitted).

[10] Other decisions confirm that conclusion. See Dees, 2017 WL 4511003, at *1 n.1; Phillips, 2015 WL 3485039, at *2; Carnegie Mellon, 2013 WL 1336204, at *5; Pesky, 2010 WL 4174670, at *2.

[11] Level 3 and other cases also suggest that the doctrine applies to previous protections, although these cases typically involved protective orders rather than orders sealing exhibits to dispositive motions. See Level 3, 611 F. Supp. 2d at 583-84, 588; In re Time, 182 F.3d at 271-72; Littlejohn, 851 F.2d at 680; Weiss, 2007 WL 2377119, at *3; Rambus, 2005 WL 1081337, at *2-3.

[12] Again, other cases show that this is the case. See In re Time, 182 F.3d at 271-72; Littlejohn, 851 F.2d at 680; Phillips, 2015 WL 3485039, at *2; Carnegie Mellon, 2013 WL 1336204, at *5; Weiss, 2007

19

Cousins reveals that the waiver doctrine applies to testimony that was not sought to be protected at trial.[13]

## VII. Substantive & Procedural Requirements

When assessing whether materials should be sealed under either the First Amendment or the common law, "a district court must comply with certain substantive and procedural requirements." Va. Dep't of State Police, 386 F.3d at 576. In the Fourth Circuit's articulation:

> As to the substance, the district court first "must determine the source of the right of access with respect to each document," because "[o]nly then can it accurately weigh the competing interests at stake."
>
> A district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

Id. (emphasis added) (citations omitted).

To satisfy the notice requirement, courts must either: (1) "notify persons present in the courtroom of the request" or (2)

WL 2377119, at *3. The Local Rules of this Court do as well. See LCR 5(C) ("A document or a portion of a document not covered by section (B) may be filed under seal only if a motion to file under seal pursuant to this section is filed contemporaneously with the material for which sealing is requested.").

[13] Other decisions establish this point as well. See Dees, 2017 WL 4511003, at *1 n.1; Phillips, 2015 WL 3485039, at *1-2.

"docket it 'reasonably in advance of deciding the issue.'" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1988) (citations omitted). The latter can include docketing the motion in a "publicly-accessible electronic docketing system." See Level 3, 611 F. Supp. 2d at 591.

## VIII.    E.D. Va. Local Rule 5(C)

Local Rule 5 also governs motions to seal. There are several requirements established by that Rule, but, as relevant here, the Rule states that "[t]he motion to file under seal shall be accompanied by . . . a separate non-confidential notice that specifically identifies the motion as a sealing motion." LCR 5(C). The notice must satisfy several substantive requirements:

> The notice shall be identified as a notice of filing a motion to seal and it shall inform the parties and nonparties that they may submit memoranda in support of or in opposition to the motion within seven (7) days after the filing of the motion to seal, and that they may designate all or part of such memoranda as confidential. Any information designated as confidential in a supporting or opposing memorandum will be treated as sealed pending a determination by the Court on the motion to seal. The notice shall also state that any person objecting to the motion must file an objection with the Clerk within seven (7) days after the filing of the motion to seal and that if no objection is filed in a timely manner, the Court may treat the motion as uncontested.

See LCR 5(C).

This Rule was meant to be followed, especially given that it

21

provides a mechanism for informing the public about its rights and obligations with respect to motions to seal. Accordingly, Local Rule 5(C) concludes by cautioning that, "[i]f the Court determines that the appropriate standards for filing material under seal have not been satisfied, it may order that the material be filed in the public record." LCR 5(C). That warning, moreover, is in addition to Rule 5(A), which states: "[u]nless otherwise provided by law, Court rule, or prior order of the Court, no document or portion of a document may be filed under seal unless the filer has complied with the procedures set forth herein." LCR 5(A).

## DISCUSSION

Given the foregoing principles, Defendants cannot prevail.

As to the trial testimony, the exhibits presented openly at trial, and jury instruction 27B, Defendants' motion will be denied because Defendants have waived any right to assert confidentiality. Even if waiver had not occurred, Defendants cannot rely on the previously protected status of any of these materials, and the relevant balancing tests counsel in favor of public access.

Wholly apart from that reasoning, moreover, Defendants' motion would have to be rejected, as to all materials Defendants wish to seal, because they failed to comply with Local Rule 5(C).

## I. Substantive & Procedural Requirements

As an initial matter, the Court has complied with its obligations. All it needed to do before deciding this motion was to provide public notice. As in Level 3, the Court did so by docketing Defendants' motion "by means of the Court's publicly-accessible electronic docketing system over two months prior to the issuance of this Opinion and Order." See Level 3, 611 F. Supp. 2d at 591.

## II. Trial Transcripts, Trial Exhibits Presented Openly at Trial & Jury Instruction 27B

The Court declines to seal the trial transcripts, the trial exhibits presented openly at trial, and jury instruction 27B.[14]

### A. The Materials Are Judicial Records that Trigger a First Amendment Analysis

A preliminary matter involves whether these materials are "judicial records." As set forth above, it is clear that trial transcripts and trial exhibits admitted into evidence constitute judicial records. Given that jury instructions are "judicially authored or created documents," moreover, they too are judicial records. See In re Application, 707 F.3d at 290.

---

[14] The Court analyzes these materials separate from the exhibits in evidence that were not discussed or displayed at trial because it is so abundantly clear that the former should not be sealed and the latter present a somewhat closer question. Certain of the principles set out above, particularly those relating to waiver, do counsel against sealing the unused exhibits. But, the Court need not resolve that issue conclusively, given that it independently denies Defendants' motion on the ground of Local Rule 5.

Furthermore, it is apparent that the proper way to analyze these materials is under the First Amendment test. As explained previously, trial transcripts and trial exhibits in evidence implicate the First Amendment. And, although the Court has not found a case expressly holding that jury instructions, on their own, do so, the analysis of the jury instructions in this case merges with that of the trial transcript. All the jury instructions were read aloud in open court at trial and are part of the transcript. See Trial Tr. 863-84.[15] The public availability of a trial transcript would therefore result in a finding that Defendants have no interest in maintaining the confidentiality of the jury instructions that outweighs the public's right of access under even the common law test. Cf. Va. Dep't of State Police, 386 F.3d at 575 (noting that "factors to be weighed in the common law balancing test" include "whether the public has already had access to the information." (citations omitted)).

## B. Defendants Waived any Right to Claim that the Materials at Issue Are Confidential

As set forth above, if no effort is made to prevent dissemination of confidential information at trial, the right to claim that trial materials containing that information should be sealed is waived. That is true, moreover, even if previous sealing or protective orders

---

[15] No one was permitted to enter or leave the courtroom during the instructions, but there were no restrictions on who could be present. See Trial Tr. 863.

covered the materials or information at issue.

Defendants do not argue that they sought to protect their confidential information at or before trial. See Defs.' Br. 1-2, 6, 12-14. Rather, Defendants note: (1) the information to be sealed was designated as confidential under the terms of the Protective Order and/or is the same as or similar to that which was previously sealed on motions of both parties; (2) Defendants agreed with Plaintiff that the proper method of protecting information at trial was to file a motion to seal after trial concluded; (3) Defendants monitored the courtroom during trial "for anyone that was not related to the Parties, the Court, or law clerks and students simply observing parts of the proceeding," and they are "not aware of any member of the public or press, let alone any competitor, that was present at trial when Hankook's confidential and trade secret information was discussed"; and (4) Defendants filed their motion as soon as they had reviewed the transcript and before the transcript became public. See Defs.' Br. 1-10; Defs.' Reply Br. 6-9, 9 n.3.

The waiver doctrine is clearly implicated here. As demonstrated by Defendants' arguments, Defendants knew of the confidential nature of the information to be presented at trial. Nevertheless, they did not attempt to protect that information during trial. They did not ask that the courtroom be closed; they did not request that observers be ordered not to reveal what they heard; they did not avoid

25

discussing confidential topics or seek to prevent Plaintiff from doing so in open court; and they did not apprise the Court of any confidentiality concerns. Further, jury instruction 27B was filed publicly on March 9, 2018 (in addition to having been read aloud in court), and no effort to seal it was made until Defendants filed their motion on March 22, 2018. Thus, this case is precisely like Certusview, in which previously sealed materials were admitted into evidence, included in public filings, and discussed openly at trial, and waiver was found. See Certusview, 198 F. Supp. 3d at 588 n.12. It is also similar to Level 3, in which an intervenor knowingly failed to take any measures to prevent the release of confidential information at trial, and the same result obtained. See Level 3, 611 F. Supp. 2d at 587-88. And, it is like Cousins, in which waiver was found because "a request to protect or seal . . . testimony should have come before, or at least during, trial" but did not. See Cousins, 858 F. Supp. 2d at 618-19. Indeed, it is also like Cousins in that "the court cannot undo any potential impact of public disclosure" that has already occurred. See id. at 619.

The points that the Defendants raise do not save them from waiver. First, as explained above, the fact that information was previously covered by sealing Orders and/or the Protective Order does not prevent waiver. See, e.g., Certusview, 198 F. Supp. 3d at 588

n.12.[16]

Second, although there appears to have been agreement between the parties as to the proper method of sealing, that fact actually confirms that a finding of waiver is warranted. The confidentiality issue was initially raised by Plaintiff to avoid potential violations of the Court's Protective Order because Plaintiff was "not planning on taking on measures to seal [trial materials] prior to trial." See Defs.' Br. Ex. A 1. Thus, Plaintiff suggested that "the proper mechanism would be to file a motion to seal after the trial." Defs.' Br. Ex. A 1. Defendants could have rejected that proposal, but they did not. Instead, they agreed that their "confidential" materials would be offered at a public trial without any protections and that the parties would only seek to seal them ex post. Defs.' Br. 2 n.1. Given that Defendants agreed to public revelation of their proprietary information, this case is even more egregious than Level 3, in which the (eventual) intervenor asked that a party advise the court of its request to maintain confidential documents admitted into evidence under seal, the party refused, and then the intervenor simply took no further action before or at trial. See Level 3, 611 F. Supp. 2d at 574-75, 587-88.

---

[16] Even if a protective or sealing order could hypothetically preclude a finding of waiver, it would not here. As explained below (albeit in the section of this Opinion assuming that waiver did not occur), the Protective Order and sealing Orders in this case do not govern the trial materials at issue.

Even if the parties' agreement could be deemed helpful to Defendants' position, moreover, that agreement would be largely irrelevant to the waiver analysis. See Miles, 799 F. Supp. 2d at 622 ("[E]ven where . . . all of the litigants support the motion to seal, and even where a public hearing on the question does not bring forth anyone to assert the right of access, a court must still engage in a careful deliberation on the issue."); see also LCR 5(C) ("Agreement of the parties that a document or other material should be filed under seal or the designation of a document or other material as confidential during discovery is not, by itself, sufficient justification for allowing a document or other material to be filed under seal."). That is especially true where, as here, a member of the public has objected to the motion to seal.

Third, even if Defendants monitored the courtroom "for anyone that was not related to the Parties, the Court, or law clerks and students simply observing parts of the proceeding," that also does not prevent waiver. See Defs.' Reply Br. 7. As noted above, "the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use." Level 3, 611 F. Supp. 2d at 583 (citations omitted). Furthermore, if "innocuous" observers (such as students) were present, there is no reason that they could not reveal Defendants'

28

information. Also, it is impossible for the Court to evaluate Defendants' representations that they monitored the courtroom and are "not aware" of attendance by anyone who might raise confidentiality concerns. The Court has no way of ascertaining, ex post, how carefully Defendants watched the courtroom and scrutinized observers. And, although the Court itself could have tracked the attendance of non-parties, it did not because it was not advised of any need to do so. Thus, the Court cannot determine whether Defendants are "not aware" of any potentially concerning observers because there were in fact none or because they were simply overlooked.

Fourth, the fact that Defendants filed their motion soon after receiving the transcript and before it became public does not change that Defendants took no measures to limit the dissemination of the information contained in the transcripts during the public trial. Again, "the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use." Level 3, 611 F. Supp. 2d at 583 (citations omitted). As Cousins indicates, moreover, if there were truly confidentiality concerns respecting trial testimony, "a request to protect or seal [that] testimony should have come before, or at least during, trial." See Cousins, 858 F. Supp. 2d at 618-19. The fact that no such request was made waives any claim that the transcripts contain confidential

information. And, that conclusion is underscored by the facts that:

(1) Defendants did not seek to protect the exhibits in evidence that were discussed in portions of the testimony sought to be sealed; and (2) Defendants did not attempt to seal jury instruction 27B, which was read at trial and contains information discussed in the testimony at issue, for almost two weeks after it was publicly filed.[17]

In sum, by knowingly failing to take any measures to protect their confidential information during trial, Defendants waived any right to assert that trial materials containing that information should be filed under seal. The proper time to seek to protect confidential information is before or at trial, not after the fact.[18]

---

[17] Moreover, it is often (and properly) the case that, where trial transcripts have been redacted after trial, the issue of confidentiality was raised before trial. See, e.g., Syngenta, 2017 WL 6001818, at *1-2, 2 n.2, 9-10; Airfacts, Inc. v. de Amezaga, 15-1489, 2017 WL 3592440, at *13-15 (D. Md. Aug. 21, 2017); Lifenet II, 2015 WL 12517430, at *1-4; Lifenet I, 2015 WL 12516758, at *1-2. Indeed, that was the case in Woven, in which the Fourth Circuit required partial sealing of the trial record where the district court had improperly denied a party's motion to close the courtroom. Woven, 1991 WL 54118, at *2, 6.

[18] One of the reasons that this is so is because courts have a wide variety of tools at their disposal to help parties avoid the dissemination of confidential information. For example, the Lifenet I court "placed [trial] observers under the protective order in th[e] case [and] sealed exhibits admitted into evidence." Lifenet I, 2015 WL 12516758, at *1-2. And, it employed those precautions to avoid having to close the courtroom, which is also an option. See id. A party that fails to take advantage of these tools cannot raise any credible argument that information revealed at trial is nonpublic.

30

## C.  Sealing Is Inappropriate even Absent Waiver

Even assuming that wholesale waiver did not occur, granting Defendants' motion as to the trial transcripts, the exhibits presented at trial, and jury instruction 27B would be improper.

### i.  The Effect of Previous Confidentiality Orders

Defendants observe that the confidentiality of many of the materials they wish to seal was protected by previous Orders of this Court. That raises two sub-issues: (1) the effect of the Protective Order; and (2) the effect of the Court's pre-trial sealing Orders.

#### 1.  The Protective Order

Defendants note that they are not arguing that the Protective Order bars the Court from analyzing whether the trial materials at issue should be filed under seal. See Defs.' Reply Br. 8. However, they do maintain that the Protective Order covered the information sought to be sealed and that "Plaintiff did not raise any objection to the prior confidential declaration of Hankook's information and documents at trial." Defs.' Br. 1-3, 3 n.2, 7, 9, 12. Thus, it is worth explaining the present effect of the Protective Order.

As Defendants correctly observe, the Protective Order stated that it "is without prejudice to a later determination regarding confidentiality at trial of documents declared 'confidential' pursuant to this Order." Protective Order 5; Defs.' Br. 3. That aligns with Local Rule 5(H), which states that "[t]rial exhibits, including

31

documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." See LCR 5(H). It also aligns with the relevant case law. See, e.g., Va. Dep't of State Police, 386 F.3d at 576-77.

Further (and relatedly), there is no requirement that a party object to a designation of materials as confidential for the Court to make its "later determination." The Protective Order provides a mechanism through which objections can be raised. Protective Order 8. But, that does not limit the Court. See Protective Order 5; see also LCR 5(C) ("Agreement of the parties that a document or other material should be filed under seal or the designation of a document or other material as confidential during discovery is not, by itself, sufficient justification for allowing a document or other material to be filed under seal.").

The Court, therefore, may determine whether materials previously designated as containing confidential information remained covered by the Protective Order at trial. The materials at issue here did not.

As set forth above, confidential information was defined in the Protective Order to include "information that constitutes confidential research, development or proprietary business information that a) is not generally available to others, b) is not

32

readily determinable from other sources, c) has been treated as confidential by the Parties; and d) is reasonably likely to lead to competitive injury if disclosed." Protective Order 3.[19] Moreover, the Protective Order was based on the factual finding that "[t]he public does not already have access to the Parties' confidential information[.]" Protective Order 2.

Here, trial materials that were previously covered by the Protective Order were admitted into evidence and presented publicly at trial, without objection. That rendered them "generally available to others" and accessible to the public, and it demonstrated that the materials have not "been treated as confidential." Consequently, they do not contain "confidential information" and the factual basis for the Protective Order is no longer satisfied. Therefore, these materials no longer retain their protected status.

As indicated above, the Protective Order also appears to cover certain materials created at trial. For example, it allows testimony, including trial testimony, to be designated as confidential "by notifying the parties on the record at the time the testimony is given, or in writing within thirty (30) days of receipt of the transcript." Protective Order 4. However, the Protective Order presumes that such trial materials otherwise satisfy the definition

---

[19] That explicit definition implies that other "confidential research, development or proprietary business information" would not be considered confidential information.

33

of confidential information and that the factual basis for the Protective Order is met. That is not the case as to any of the materials created at trial, given that no protections were requested. Thus, the Protective Order applies to neither the previously protected materials presented at trial nor the materials created at trial.[20]

## 2. The Sealing Orders

Defendants also point to the fact that the information they wish to seal was covered by the Court's previous sealing Orders, including those sealing exhibits to dispositive motions (which necessarily implicated the First Amendment). See Defs.' Br. 3-7, 9-10, 13-14; Defs.' Reply Br. 8.

The trial materials are not protected by these Orders, however. That is a simple matter of the Court's Local Rules. Local Rule 5(H) states that "[t]rial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." LCR 5(H) (emphasis added). Nothing in the Court's sealing Orders indicated that this Rule had been abrogated. (ECF Nos. 70, 71, 120,

---

[20] This conclusion is underscored by the fact that the Protective Order was also based on the factual finding that "[t]he Parties [sic] interest in sealing confidential information outweighs the public's common law interest in access to such documents." Protective Order 1 (emphasis added). The First Amendment was not anywhere mentioned. Hence, the Protective Order has no bearing on whether the Court can analyze materials under the First Amendment standard.

121, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 319, 320, 323, 324, 325, 326). Hence, the Court is permitted to assess whether materials used at trial should be filed under seal, even if those materials were previously sealed for other purposes.

## ii.   The Right of Access Balancing Tests

As set out above, there are two rights of access: (1) the common law right; and (2) the First Amendment right. As the Fourth Circuit has held, "[t]he distinction between the rights of access afforded by the common law and the First Amendment is 'significant,' because the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" In re Application, 707 F.3d at 290 (citations omitted). Accordingly, if the common law right cannot be overcome, the First Amendment right, as a definitional matter, also cannot. See Level 3, 611 F. Supp. 2d at 579-80.

Here, the materials that Defendants wish to seal fail even the common law test. To overcome the common law presumption of access, "a court must find that there is a 'significant countervailing interest' in support of sealing that outweighs the public's interest in openness." In re Application, 707 F.3d at 293 (citations omitted). Courts consider, inter alia, "whether the records are sought for improper purposes, such as . . . unfairly gaining a business advantage" and "whether the public has already had access to the

35

information contained in the records." Id. (citations omitted).

Defendants argue that their materials should be sealed because they are "proprietary to Hankook and not known to Hankook's competitors and, therefore, [their] release 'would cause Hankook competitive harm.'" Defs.' Br. 13. They offered the declaration of Jong Guk Kim, a Senior Research Engineer for HTCL, to substantiate that claim. See Defs.' Br. 13; Defs.' Br. Ex. D.

There seems to be no dispute that Defendants' materials are proprietary and could cause Defendants harm if disclosed. That assertion supports a conclusion that Defendants' information could be used for an improper purpose, such as "unfairly gaining a business advantage." Viewed in a vacuum, that could overcome the common law presumption. Here, however, another factor must also be weighed: "whether the public has already had access to the information." In this case, Defendants' confidential information was revealed publicly at a trial without restriction or objection. Jury instruction 27B, moreover, was filed publicly on March 9, 2018 and it was read aloud in open court. See Trial Tr. 883. And, the trial exhibits were not only admitted into evidence, but also discussed in detail on the record and/or shown on large television screens in the court during the presentation of evidence and in closing arguments. See, e.g., Trial Tr. 169-72, 177-78, 471-72, 477-79, 525-28, 530-32, 538-39, 558-60, 571-73, 718, 834, 855-56; see also

36

Mar. 6, 2018 Minute Sheet; Mar. 7, 2018 Minute Sheet; Mar. 8, 2018 Minute Sheet.

The relevant factors are, at best, in equipoise. Given that the presumption is in favor of open access and that a "significant countervailing interest" must "outweigh[] the public's interest in openness" to overcome that presumption, equipoise is insufficient. See In re Application, 707 F.3d at 293 (citations omitted).

Furthermore, the thumb is even more firmly on the scale in favor of open access under the First Amendment. See In re Application, 707 F.3d at 290. And, although protecting proprietary commercial information can be a compelling interest under the First Amendment test, the interest is not compelling where the information has already been released publicly by the party that wishes to restrict access. See Doe, 749 F.3d at 269 ("A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records." (emphasis added)); Kingery v. Quicken Loans, Inc., 2:12-cv-1353, 2014 WL 1794863, at *5 (S.D. W. Va. May 6, 2014) ("There is no compelling governmental interest in protecting information that is already public." (citations omitted)); VCA Cenvent, Inc. v. Chadwell Animal Hosp., LLC, 11-1763, 2013 WL 1818681, at *2 (D. Md.

Apr. 29, 2013) (same).[21] Indeed, any assertion that Defendants here have a "compelling interest" in confidentiality would strain credulity. As noted above, Defendants agreed to public dissemination of their information and raised no confidentiality issues with the Court until well after the fact. And, moreover, as set forth below, they failed to comply with even basic requirements of the Court's Local Rules governing motions to seal (despite clearly having knowledge of those requirements).

In sum, Defendants do not have an interest sufficiently strong to outweigh the public's right of access as to the trial transcripts, the trial exhibits presented at trial, and jury instruction 27B.

## III. Failure to Comply with Local Rule 5(C)

Defendants' motion will also be denied, as to all materials they wish to file under seal, for a separate (and simpler) reason: Defendants failed to comply with Local Rule 5(C).

Intervenor Crosby argues that, in seeking to seal the trial testimony, the trial exhibits, and jury instruction 27B, Defendants failed to follow Local Rule 5(C), which provides that "[t]he motion to file under seal shall be accompanied by . . . a separate non-confidential notice that specifically identifies the motion as

---

[21] In Woven, confidential information had already been released but only because of the district court's improper denial of a motion to close the courtroom. See Woven, 1991 WL 54118, at *2, 6.

a sealing motion." Intervenor's Br. *3-4; Intervenor's Reply Br. 1-3; LCR 5(C).[22] Defendants respond with two sets of arguments. First, they claim that Crosby has been long aware of this action and, in fact, has retained one of the experts in this case for his lawsuit; thus, lack of notice did not harm Crosby. See Defs.' Intervenor Opp'n 4-5. Second, they assert that they provided notice as required by Rule 5(C). See Defs.' Intervenor Opp'n 5-6. They note that they filed a motion to seal, a non-confidential supporting memorandum, and a non-confidential proposed order. Defs.' Intervenor Opp'n 5. Defendants also argue that the docket entries in this case served as notice and identified the precise information that they seek to seal. Defs.' Intervenor Opp'n 5. Finally, Defendants claim that notice was provided because the information at issue was the subject of past motions to seal, which the Court granted. Defs.' Intervenor Opp'n 6.

Defendants' first set of arguments can be rejected outright. Rule 5(C)'s notice requirement is imposed on anyone moving to file under seal. See LCR 5(C); see also LCR 5(A). Consequently, it is irrelevant that an objecting member of the public did not, in fact, need the notice. Indeed, under Defendants' logic, no one could successfully object to the failure comply with Rule 5(C) because,

---

[22] Crosby references Local Rules 5(B) and 5(C), but 5(C) is operative here. See Intervenor's Br. *3.

by timely objecting, the objector would show that notice was unnecessary.

Defendants' second set of arguments is also unavailing. Local Rule 5(C) requires that a motion to seal be accompanied by: (1) a non-confidential supporting memorandum; (2) a non-confidential proposed order; and (3) "a separate non-confidential notice that specifically identifies the motion as a sealing motion." LCR 5(C). Meeting two out of three of these requirements, as Defendants have done, is not enough. See LCR 5(C); see also LCR 5(A).

Furthermore, the docket entries for Defendants' motion to seal and supporting memorandum cannot provide the notice demanded by Rule 5(C). The Rule expressly instructs that these materials must be accompanied by "a separate non-confidential notice." LCR 5(C) (emphasis added). That notice, moreover, must meet several substantive requirements, which, as set forth above, include apprising members of the public of their rights, deadlines, and obligations with respect to a motion to seal. Defendants' docket sheet entries do not meet those substantive requirements.[23]

Additionally, the fact that the information at issue was previously the subject of motions to seal (which were granted) does not provide sufficient notice. Past motions to seal in no way advise the public about its rights, deadlines, and obligations with respect

---

[23] Defendants' motion and supporting memorandum do not do so either.

40

to this motion to seal. Indeed, the Local Rules clearly anticipate that a separate motion to seal will be filed for trial materials, even if they were previously protected, and the public is wholly entitled to object to that motion. See LCR 5(C) ("Agreement of the parties that a document or other material should be filed under seal or the designation of a document or other material as confidential during discovery is not, by itself, sufficient justification for allowing a document or other material to be filed under seal."); LCR 5(H) ("Trial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge."); see also LCR 5(C) ("The notice . . . shall inform the parties and nonparties that they may submit memoranda in support of or in opposition to the motion within seven (7) days after the filing of the motion to seal[.]").

It is also worth noting that the parties have filed separate public notices for every motion to seal so far. (ECF Nos. 56, 64, 77, 82, 106, 112, 141, 151, 157, 163, 169, 185, 193, 200, 244, 257, 264, 287, 302, 309). Thus, Defendants were aware of their obligation under Rule 5(C) to file a notice when they filed the present motion. They simply did not do so.[24]

---

[24] Upon further review, it is clear that the parties' past notices have not perfectly complied with the substantive requirements of Rule

Local Rule 5(C) concludes by stating that, "[i]f the Court determines that the appropriate standards for filing material under seal have not been satisfied, it may order that the material be filed in the public record." LCR 5(C). And, Local Rule 5(A) instructs that "[u]nless otherwise provided by law, Court rule, or prior order of the Court, no document or portion of a document may be filed under seal unless the filer has complied with the procedures set forth herein." LCR 5(A).

These provisions of the Local Rule provide an independent ground for denying Defendants' motion. Defendants entirely disregarded a basic notice requirement that is clearly specified in the Local Rule governing motions to seal (and did so despite having knowledge of that requirement). That notice requirement is of distinct importance, moreover, because it implicates not just the rights and obligations of the parties, but also those of the public at large. Indeed, by failing to provide the requisite notice, Defendants may well have limited the pool of objectors and thereby excluded arguments and viewpoints that the Court should have considered. Rule 5(C) was created to protect those who might wish to opine on the

5(C). The Court will not permit notices that do not fully satisfy these requirements in the future. Nevertheless, the notices previously filed in this case did, at least, publicly alert interested observers that motions to seal were pending, differentiate those motions from others filed without a separate notice, and reference Local Rule 5 (which itself sets forth the public's rights, deadlines, and obligations). Filing a deficient Rule 5(C) notice is quite different than filing no notice at all.

propriety of sealing court materials, and it cannot be ignored.

## CONCLUSION

For the reasons set forth above, the Court shall deny HANKOOK
TIRE COMPANY LIMITED'S AND HANKOOK TIRE AMERICA COMPANY'S MOTION TO
SEAL CONFIDENTIAL EXHIBITS, TRIAL TRANSCRIPTS, AND JURY INSTRUCTION
(ECF No. 433).

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 14, 2018

43